# NO. 23-1215 (L);

### 23-1250(XAP)

---

United States Court of Appeals
for the
Second Circuit

---

DONNA BROWE, TYLER BURGESS, BONNIE JAMIESON, PHILIP JORDAN, ESTATE OF BEVERLY BURGESS,

*Plaintiffs - Appellants - Cross-Appellees,*

LUCILLE LAUNDERVILLE,

*Plaintiff - Counter-Defendant - Appellant - Cross-Appellee,*

-against-

CTC CORPORATION and BRUCE LAUMEISTER

*Defendants - Counter-Claimants - Appellees - Cross-Appellants.*

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT*

---

**PAGE PROOF BRIEF FOR APPELLANTS**

---

John D. Stasny, Esq.
WOOLMINGTON, CAMPBELL, BENT & STASNY, P.C.
*Attorney for Donna Browe, Tyler Burgess, Bonnie Jamieson,
Philip Jordan, Estate of Beverly Burgess and Lucille Launderville*
4900 Main Street, PO Box 2748
Manchester Center, VT 05255
(802) 362-2560

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ 2

TABLE OF AUTHORITIES ........................................................... 4

JURISDICTIONAL STATEMENT .................................................. 6

STATEMENT OF THE ISSUES .................................................... 7

STATEMENT OF THE CASE ....................................................... 8

   I.    Nature of the Case ........................................................... 8

   II.   Facts and Procedural History ....................................... 10

      A.   CTC's deferred compensation plan. ........................... 10

      B.   Laumeister and CTC's misappropriation of Plan assets. ............... 11

      C.   Roles of the Plan fiduciaries ....................................... 12

      D.   Laumeister's assurances to Browe and Launderville. ................ 13

      E.   Procedural history ..................................................... 13

SUMMARY OF THE ARGUMENT ............................................... 18

STANDARD OF REVIEW ........................................................... 21

ARGUMENT ............................................................................... 22

   I.    The District Court's order offsetting Launderville's Plan benefits violates ERISA. ....................................................... 22

A.   ERISA § 206(d) prohibits the offset. ............................................ 22

B.   The offset would allow Laumeister and CTC to keep funds owed to

the Plan, in violation of ERISA. ........................................................... 27

II.   The allocation of liability between Laumeister and Launderville does

not follow applicable trust law. ................................................................. 28

A.   CTC must be included in the allocation. ...................................... 30

B.   The benefits to Laumeister and CTC from the breach must taken

into account. ......................................................................................... 32

C.   Respective degrees of fault. ............................................................ 38

III.   The District Court did not account for all growth in the Plan fund

balance. ................................................................................................... 44

IV.   Launderville and Browe's claims for denial of benefits were timely. ..

.................................................................................................................. 48

CONCLUSION ............................................................................................ 53

# **TABLE OF AUTHORITIES**

## **Cases**

*Browe v. CTC Corp.*, 15 F.4th 175
(2d Cir. 2021) ......................... 9, 12, 14, 15, 16, 28, 29, 33, 37, 38, 41, 44, 48

*Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*,
201 F.3d 44 (2d Cir. 1999) ................................................................. 19, 51

*Davis v. Velez*, 797 F.3d 192 (2d Cir. 2015)....................................................49

*Donachie v. Liberty Life Assur. Co. of Boston*, 745 F.3d 41, 47
(2d Cir. 2014) ............................................................................................. 49

*Donovan v. Bierwirth*, 754 F.2d 1049 (2nd Cir. 1985) ................................21

*Guidry v. Sheet Metal Workers Nat. Pension Fund*,
493 U.S. 365 (1990) ................................................................. 22, 24, 25

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010).................49

*Herberger v. Shanbaum*, 897 F.2d 801 (5th Cir. 1990).............................. 23

*In re Coudert Bros. LLP*, 809 F.3d 94 (2d Cir. 2015) ...........................40, 44

*In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65 (2d Cir. 1992) .......................44

*In re Joseph Kanner Hat Co., Inc.*, 482 F.2d 937
(2nd Cir.1973) .............................................................................................21

*In re PCH Assocs.*, 949 F.2d 585 (2d Cir. 1991) .........................................50

*Lehr v. Perri*, No. 2:17-CV-1188, 2019 WL 1556672
(E.D. Cal. Apr. 10, 2019) ......................................................................... 25

*LoPresti v. Terwilliger*, 126 F.3d 34 (2nd Cir. 1997) ..................................21

*Parker v. Bain*, 68 F.3d 1131 (9th Cir. 1995)................................................ 23

*United States v. Bryser*, 95 F.3d 182 (2d Cir. 1996) ................................... 44

## **Statutes**

28 U.S.C. § 1291 ................................................................... 6

28 U.S.C. § 1331 ................................................................... 6

ERISA § 2, 29 U.S.C. § 1001 ............................................. 6, 27

ERISA § 3, 29 U.S.C. § 1002 ................................................ 34

ERISA § 206, 29 U.S.C. § 1056 ................... 18, 22, 23, 25, 26, 27

ERISA § 403, 29 U.S.C. § 1103 ....................... 18, 22, 28, 41

ERISA § 404, 29 U.S.C. § 1104 ............................................. 36

ERISA § 406, 29 U.S.C. § 1106 ............................... 18, 22, 28

ERISA § 408, 29 U.S.C. § 1108 ............................................. 34

ERISA § 409, 29 U.S.C. § 1109 ............................... 18, 22, 28

ERISA § 502, 29 U.S.C. § 1132 ........................ 6, 17, 19, 48, 49

ERISA § 4044, 29 U.S.C. § 1344 ........................................... 17

11A V.S.A. § 14.05 .............................................................. 31

## **Other Authorities**

RESTATEMENT (SECOND) OF TRUSTS § 170 ............................. 34

RESTATEMENT (SECOND) OF TRUSTS § 257 ............................. 26

RESTATEMENT (SECOND) OF TRUSTS § 258 .................... 18, 30, 32

RESTATEMENT (THIRD) OF TRUSTS § 102 .................. 30, 31, 38, 39

Uniform Trust Code § 1002 ................................................ 33

## JURISDICTIONAL STATEMENT

This suit was filed by participants and beneficiaries of a deferred compensation plan for relief under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*. ("ERISA"). The District Court therefore had jurisdiction under 29 U.S.C. § 1132(e), and alternatively under 28 U.S.C. § 1331.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. The District Court entered a final judgment on its docket on August 18, 2023 (Index on Appeal p. 32), and set forth its judgment on a separate document on the same day. (Judgment in a Civil Action p. 1.) Appellants timely filed their Notice of Appeal on August 31, 2023. (Index on Appeal p. 32.) This appeal is from a final judgment that disposes of all parties' claims.

## **STATEMENT OF THE ISSUES**

1. Whether ERISA prohibits the District Court's offset of Defendants' counterclaim against Plaintiff Lucille Launderville's deferred compensation plan benefits.

2. Whether the District Court's allocation of liability between Defendant Bruce Laumeister and Plaintiff Lucille Launderville as ERISA co-fiduciaries complies with common law trust principles applicable under ERISA.

3. Whether the District Court erred by refusing to account for growth in the deferred compensation plan fund balance based on the law of the case doctrine.

4. Whether the District Court erred in holding that Plaintiffs Donna Browe and Lucille Launderville's claims for denial of deferred compensation plan benefits were time-barred.

## STATEMENT OF THE CASE

### I.     Nature of the Case

Plaintiffs-Appellants ("Plaintiffs") are participants and beneficiaries of a deferred compensation plan (the "Plan") who sued Defendants-Appellees ("Defendants") for breach of fiduciary duties to the Plan and for other relief under ERISA.  (2nd Amended Complaint pp. 1–4; Findings of Fact and Conclusion of Law dated 1/22/18 ["2018 Findings"] p. 1.) Defendants denied liability and counterclaimed against Plaintiff Lucille Launderville on the theory that if Defendants were liable as fiduciaries, then Launderville was liable for contribution and indemnity as a co-fiduciary.  (2018 Findings pp. 1, 53–54.)

After a bench trial on the merits, the United States District Court for the District of Vermont (Reiss, J.) entered judgment against Defendant Bruce Laumeister for breaching his fiduciary duties, but also entered judgment against Launderville on Defendants' counterclaim (2018 Findings p. 62), and allocated fault between Launderville and Laumeister.  (Opinion and Order dated October 18, 2018 ["2018 Opinion and Order"] p. 19.)  The court also fashioned an order for repayment to the Plan and distribution of the Plan's recovery to its beneficiaries.  (2018 Opinion and Order pp. 22–23.)

Both parties then took their first appeal to this Court. *Browe v. CTC Corp.* ("*Browe I*") 15 F.4th 175 (2d Cir. 2021). This Court reversed in part, affirmed in part, and remanded to the District Court. *Id.* at 208. On remand, the District Court recalculated the award to the Plan, fashioned a new scheme for distribution of the Plan's recovered assets among beneficiaries, and revised its allocation of fault between Laumeister and Launderville. (Supplemental Findings of Fact, Conclusions of Law, and Remedial Order dated December 16, 2022 ["2022 Remedial Order"] pp. 24, 27–28; Opinion and Order filed April 17, 2023 ["2023 Opinion and Order"] p. 10; Entry Order filed July 11, 2023 pp. 1–2.)

In this appeal, Plaintiffs seek reversal of the District Court's judgment on four grounds: (1) the court cannot offset Launderville's benefits in the Plan based on her liability to Defendants; (2) the fault allocated to Launderville was excessive based on applicable trust law principles; (3) the recalculated award to the Plan is too low; and (4) the court erroneously granted Defendants' limitations defense against Launderville's and Plaintiff Donna Browe's claims for denial of benefits.

## II.   Facts and Procedural History

### A.   CTC's deferred compensation plan.

Plaintiffs Lucille Launderville, Donna Browe, and Philip Jordan were employees of Defendant CTC Corporation ("CTC". (2018 Findings pp. 2–3.) The three other Plaintiffs are the estate of Beverly Burgess and her only two children—Bonnie Jamieson and Tyler Burgess. (*Id.*) Jamieson and Tyler Burgess are also the only two beneficiaries of Beverly Burgess' estate. (*Id.*) Beverly Burgess worked for CTC before her death in 2004. (*Id.*)

CTC operated a photo-finishing and processing business in Vermont from 1979 until it dissolved in 2014. (2018 Findings p. 3.) Laumeister was CTC's sole shareholder, Chief Executive Officer, and Chairman of its Board of Directors throughout CTC's existence. (*Id.*)

By late 1989 or 1990, CTC began offering the Plan to employees. (*Id.* p. 9) CTC created written terms for the Plan in 1990 (Defendants' Trial Exhibit A [the "1990 Plan Agreement"]), and a revised set of terms in 1997. (Defendants' Trial Exhibit B [the "1997 Plan Agreement"]). The 1990 and 1997 versions both stated that the "Plan shall be administered by the employer" through its Board of Directors (of which Laumeister was Chairman, as noted above). (Defendants' Trial Exhibit A p. 1; Defendants' Trial Exhibit B p. 1.) Both Agreements also provided that assets of the Plan

10

would be held and owned by CTC, rather than in separate trust for the Plan's beneficiaries.  (Defendants' Trial Exhibit A p. 4; Defendants' Trial Exhibit B pp. 4–5.)

### B.     Laumeister and CTC's misappropriation of Plan assets.

Laumeister deposited the Plan's assets in a Franklin mutual fund called "Mutual Discovery."  (2018 Findings pp. 16–17.)  In 2003, he moved the Plan's assets to an account under CTC's name at Mission Management & Trust in Arizona ("Mission Trust").  (Findings pp. 18, 22, 31; Transcript 12/6/17 p. 48–51; Transcript 3/5/18 p. 41.)  He combined the Plan's assets with his personal assets at Mission Trust for "investment purposes," and controlled the account.  (Findings pp. 5, 16, 18, 22, 31; Transcript 12/6/17 p. 48–51; Transcript 3/5/18 p. 41; Plaintiffs' Trial Exhibit 27 pp. MM0116, MM123.)

With the advent of digital photography, CTC's film photo-finishing business began to decline.  (2018 Findings p. 18.)  Laumeister and CTC began syphoning away Plan assets to prop up the failing business. (Findings pp. 18, 40; Transcript 12/6/17 pp. 69–70, 74– 75.)  Laumeister testified that by 2004, he had transferred all the Plan's assets to CTC's "general business account" to pay CTC's expenses (Transcript 12/6/17 pp. 69–70.)

### C.    Roles of the Plan fiduciaries.

The trial court found, and this Court affirmed, that Launderville, Laumeister, and CTC were all fiduciaries of the Plan. *Browe I*, 15 F.4th at 200–02. Launderville, however, was not given a role in administering the Plan until either 1995 or 1999. (2018 Findings pp. 8, 10, 54.) The inconsistency in the trial court's findings on the exact year are explained *infra* at Part II(C) of the Argument, at footnote 3. In 2008, she left employment with CTC entirely. (*Id.* p. 22.)

Laumeister was the "primary Plan decision-maker." (2022 Remedial Order p. 22.) "At all times, he held a superior position to Plaintiff Launderville and was able to exert control over her Plan decision-making." (2018 Opinion and Order p. 18.) Laumeister controlled the Mission Management account where the Plan's funds were comingled with his own assets for investment purposes. (2018 Findings pp. 18, 22, 31; Transcript 12/6/17 p. 48–54; Transcript 3/5/18 p. 41; Plaintiffs' Trial Exhibit 27.) It was Laumeister who "made the decision to use Plan funds to pay CTC's operating expenses . . ." (2018 Opinion and Order p. 18.) He disclosed this use of the Plan's funds to Launderville in 2004. (2018 Findings p. 18.)

### D.     Laumeister's assurances to Browe and Launderville.

Despite CTC's declining condition and the loss of Plan funds, Laumeister assured Launderville and Browe that he would fulfill their Plan benefits.  (2018 Findings pp. 28–29; Plaintiffs' Trial Exhibit 10.)  He affirmed in a 2008 email to Launderville that he was "instructing Mission Trust" (where he apparently still held assets), to pay Launderville's and Browe's benefits when they reached age 65.  (Plaintiffs' Trial Exhibit 10.)  He again affirmed in 2015 that he "did promise to personally fulfill" Launderville's Plan benefits, and Browe's as well.  (2018 Findings p. 29.)  That same year, Launderville began to contact other Plan participants about potential claims against Laumeister and CTC related to the Plan (*id.* pp. 22, 23–24), some of whom joined as Plaintiffs in filing suit.

### E.     Procedural history.

Plaintiffs filed suit in December 2015 (Index on Appeal p. 5).  They asserted six counts against Defendants: Count I for failure to pay Plan benefits, Count II for certain declaratory and injunctive relief, Counts III–V for breaches of fiduciary duties, and Count VI for violating ERISA's reporting obligations.  (2nd Amended Complaint pp. 14–23.)  Their claims for breach of fiduciary duties sought restoration of Plan assets, on behalf of the Plan as a whole.  (*Id.* pp. 19, 21–24.)

Defendants admitted they took the Plan's assets but denied liability. (2018 Findings pp. 1, 18)  They argued that they were entitled to take the Plan's assets because, according to them, the Plan qualified as a "top hat plan" under ERISA, exempting it from ERISA's funding, participation and vesting, and fiduciary requirements.  (*Id.* pp. 1, 18, 33; 2018 Opinion and Order p. 2.)  That theory was rejected by the District Court and by this Court on appeal, and is no longer at issue.  *Browe I*, 15 F.4th at 196–97. Defendants also filed a counterclaim for contribution against Launderville, on the theory that if the Plan lacked top hat status, then Launderville was liable to them as a co-fiduciary.  (2018 Findings pp. 1, 62; Amendment to Defendants' Answer to 2nd Amended Complaint pp. 26–27.)

After a five-day bench trial, the District Court awarded judgment to Plaintiffs on their breach of fiduciary duty claims under ERISA, and awarded $350,603 in repayment to Plan.  (2018 Opinion and Order p. 10.) The court limited Laumeister's liability to 60% of the award and assessed no liability against CTC.  (*Id.* pp. 22–23.)  The court awarded judgment against Launderville on Defendants' counterclaim, but then ordered her to pay 40% of the Plan's recovery directly to the Plan.  (*Id.*).  The court ordered that assets recovered by the Plan be disbursed to eligible Plan participants on a per capita basis.  (*Id.* p. 22.)

14

Both parties appealed, and this Court reversed in part, affirmed in part, and remanded the case. *Browe I*, 15 F.4th at 208. The Court vacated the award to the Plan because the amount was based on a projected balance of the Plan as of 2004, and therefore failed to capture lost investment gains beyond that year. *Id.* at 198. The Court also vacated the order for a per capita distribution of Plan assets, because it would violate—or at least risk violating—vested rights of participants whose benefits may exceed a per capita share. *Id.* at 206. The Court reversed the orders limiting Laumeister's liability to 60% of the award and requiring Launderville to make repayment to the Plan, holding that Laumeister was jointly and severally liable for the entire award, and that Launderville's liability (if any) would be owed to Defendants in contribution rather than to the Plan. *Id.* at 200.

The Court directed the District Court on remand to recalculate the award to the Plan in "order to capture losses through the date of judgment," *id.* at 199; and "to craft a remedial scheme that takes into account the vested rights of participants after conducting, to the extent necessary, any additional fact-finding." *Id.* at 206. The Court also directed the District Court to assess the extent of CTC's liability as a co-fiduciary, and granted permission for the District Court to revisit the allocation of fault between

Launderville and Laumeister, expressing no view on that allocation. *Id.* at 200–01.

On remand, Plaintiffs offered testimony from their expert, economist Richard Heaps, on the recalculation of the award to the Plan. Mr. Heaps projected the Plan's total balance through March 2022 (shortly before the bench trial on remand), using reasonable growth rates for projected investment gains. (Transcript 6/3/22 p. 20.) He also broke out the total balance into shares for individual Plan participants, based on a CTC record listing the participants' percentage shares in the Plan. (*Id.* pp. 23–24; Plaintiffs' Trial Exhibit 42.) He then factored in adjustments for benefit payments made from the Plan to certain participants. (Transcript 6/3/22 pp. 24–26; Plaintiffs' Trial Exhibit 41.) Ultimately, all of these elements of his methodology were accepted by the District Court. (Entry Order filed 6/7/22 p. 2.)

A final element of Mr. Heaps' recalculation, which was rejected by the District Court and is now at issue in this appeal, was an adjustment he made to the Plan's projected balance, based on the actual balance the Plan had grown to in total by the end of the year 2000. (Transcript 6/3/22 p. 22.) Had that adjustment been allowed, the Plan's March 2022 balance would have been $930,795. (*Id.* p. 30.). Excluding the adjustment, but

16

otherwise allowing Mr. Heaps' methodology, the Court ultimately adopted a restoration award to the Plan totaling $829,915. (Entry Order filed 7/11/23 p. 2.)

The total Plan award was allocated among Plan participants according to the methodology used by Mr. Heaps (except as otherwise noted above). (*Id.* pp. 1–2.) The District Court made a determination that Browe and Launderville's denial of benefit claims under ERISA § 502(a)(1)(B) were time-barred, but that they were still entitled to their shares in the Plan as vested benefits under 29 U.S.C. § 1344. (2023 Remedial Order pp. 18–19.)

On the subject of contribution among co-fiduciaries, no additional evidence was considered on remand. (Entry Order filed 6/7/22 p. 5.) The court revised its allocation of fault, increasing Launderville's share of liability by assigning equal fault to her and Laumeister, but excluding CTC from the allocation. (2022 Remedial Order p. 24.) The court also awarded an offset against Launderville's Plan benefits, based on her liability to Defendants, effectively reducing Defendants' total liability to the Plan. (*Id.* 26.)

The court entered final judgment on August 18, 2023 (Index on Appeal p. 32), and Plaintiffs timely filed this appeal. (*Id.*)

## SUMMARY OF THE ARGUMENT

This Court must correct errors by the District Court on four issues. First, the order offsetting Launderville's benefits in the Plan, based on her liability to Laumeister and CTC in contribution, is prohibited by ERISA § 206(d), which protects ERISA benefits from the reach of creditors. Section 206(d)(4) allows an except for offsetting the plan benefits of fiduciaries who owe liability back "to the plan," but Launderville does not owe liability "to the plan," so the except does not apply to her. The offset would also have the effect of allowing Laumeister and CTC to retain a portion of what is owed back to the Plan, in violation of ERISA §§ 403(c), 406(b)(1), and 409(a).

Second, the District Court' revised allocation of fault between Laumeister and Launderville fails to follow settled principles of trust law. The court failed to include CTC in its apportionment of fault, despite CTC's status as a co-fiduciary. The court also failed to take into account the benefits received by Laumeister and CTC from their breach of duties, in accordance with Restatement (Second) of Trusts § 258(1)(b). The court also failed to apply appropriate factors for determining respective degrees of fault to its own factual findings.

Third, the court's recalculation of the award to the Plan fails to capture all of the Plan's losses, because the court refused to adjust for actual growth in the Plan's balance, as described above in the Statement of the Case. In addition to undercompensating the Plan, this violates participants' vested rights in their benefits, which would have grown with the Plan's total balance.

Fourth, the court erred by holding that Launderville and Browe's denial of benefit claims under ERISA § 502(a)(1)(B) were time-barred. Denial of benefit claims do not accrue until there is a clear repudiation that is "known, or should be known, to the plaintiff." *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999). The District Court's findings show that Laumeister repeatedly *affirmed* that Launderville and Browe would receive their benefits, and did not repudiate them at any time that would support a limitations defense. Because this issue did not affect the relief awarded in the case, this Court may decline to review it, but it is briefed below because of statements by the District Court about the potential impact of the ruling on attorneys' fees.

This Court must (1) reverse the offset award against Launderville's benefits, (2) vacate the revised allocation of liability between Launderville and Laumeister and remand for a proper allocation, (3) vacate the

restoration award and remand for the limited purpose of adjusting for actual growth in the Plan balance that was excluded from the calculation, and (4) reverse the dismissal of Browe and Launderville's denial of benefit claims (unless review of that issue is determined unnecessary).

## STANDARD OF REVIEW

Appellants' arguments on appeal dispute the District Court's legal conclusions, rather than its factual findings, regarding the scope of ERISA's anti-alienation provision, the rules for apportioning liability among co-fiduciaries, the law of the case doctrine, and the statute of limitations. *De novo* review is therefore appropriate. *See LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2nd Cir. 1997) (recognizing that legal issues and mixed questions of law and fact in ERISA cases are subject to *de novo* review).

The issue of how to calculate losses to be restored to the Plan, which is implicated in the District Court's application of the law of the case doctrine to the recalculation of the award to the Plan, is also question of law subject to *de novo* review. "[T]he proper formula for calculating damages is essentially a question of law." *Donovan v. Bierwirth*, 754 F.2d 1049, 1052 (2nd Cir. 1985). "Consequently the 'clearly erroneous' standard does not apply; rather, 'it is enough that the appellate court should be convinced . . . that the result [does or] does not jibe with the applicable rule of law.'" *Id.* (quoting *In re Joseph Kanner Hat Co., Inc.*, 482 F.2d 937, 939 (2nd Cir.1973))

21

## ARGUMENT

## I.   The District Court's order offsetting Launderville's Plan benefits violates ERISA.

The District Court's order offsetting CTC and Laumeister's counterclaim against Launderville's Plan benefits violates ERISA in two respects.  First, it violates the anti-alienation provision at ERISA § 206(d), 29 U.S.C. § 1056(d), which protects Launderville's benefits from creditors.  Second, the effect of the offset would allow Laumeister and CTC to keep a portion of the funds they owe back to the Plan, instead of repaying the Plan's losses in full, in violation of ERISA §§ 403(c)(1), 406(b), and 409(a).  29 U.S.C. §§ 1103(c)(1), 1106(b), and 1109(a).  For both of these reasons, this Court must reverse the order offsetting Launderville's Plan benefits.

### A.   ERISA § 206(d) prohibits the offset.

Section 206(d) of ERISA requires all deferred compensation plans covered by ERISA to "provide that benefits provided under the plan may not be assigned or alienated."  29 U.S.C.A. § 1056(d).  Both Plan Agreements include such a provision.  (Defendants Trial Exhibit A p. 4; Defendants Trial Exhibit B p. 4.)

ERISA's anti-alienation provision protects a plan participant's benefits against claims of judgment creditors, even where the participant is liable for egregious conduct.  *See Guidry v. Sheet Metal Workers Nat.*

*Pension Fund*, 493 U.S. 365, 367 (1990) (rejecting a judgment creditor's claim for constructive trust against benefits of a participant found to have committed embezzlement). Prior to 1997, Courts of Appeals were split on whether an exception to ERISA's anti-alienation provision should be permitted when an individual was found liable for breaching her fiduciary duties to an ERISA plan, and the same individual was also a beneficiary of the same plan. *Compare, e.g, Parker v. Bain*, 68 F.3d 1131, 1140 (9th Cir. 1995)*, with Herberger v. Shanbaum*, 897 F.2d 801, 804 (5th Cir. 1990). In 1997, Congress amended ERISA to resolve that question, and did so by defining the following exception to the anti-alienation provision, at ERISA § 206(d)(4):

> Paragraph (1) shall not apply to any offset of a participant's benefits provided under an employee pension benefit plan against an amount that the participant is ordered or required to pay **to the plan** if--
>
> > (A) the order or requirement to pay arises--
> >
> > > (i) under a judgment of conviction for a crime involving such plan,
> > >
> > > (ii) under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of this subtitle . . .
> >
> > (B) the judgment, order, decree, or settlement agreement expressly provides for the offset of all or part of the amount ordered or required to be paid **to the plan** against the participant's benefits provided under the plan, . . . .

23

29 U.S.C. § 1056(d)(4) (emphasis added).

The exception, by its plain language, allows an offset only when an individual owes payment "to the plan."  Liability for contribution owed to a co-fiduciary, who is himself liable for breach of his fiduciary duties to the plan, does not fit within the plain language of the exception.  The language adopted by Congress is consistent with ERISA's core goal of protecting deferred compensation plans, because it gives an ERISA plan the benefit of an offset to retain amounts owed "to the plan."  When the party seeking an offset is a co-fiduciary in breach of his own ERISA duties, rather than the plan itself, an offset has no value to the plan.

The Supreme Court warned in *Guidry* that courts should not expand equitable exceptions to ERISA's anti-alienation provision beyond the statute's text, recognizing that the statute reflects a congressional policy choice, "even if that decision prevents others from securing relief for the wrongs done them." 493 U.S. at 376.  The *Guidry* court went on to explain:

> The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended only on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement whenever enforcement appears inequitable. A court attempting to carve out an exception that would not swallow the rule would be forced to determine

whether application of the rule in particular circumstances would be "especially" inequitable. The impracticability of defining such a standard reinforces our conclusion that **the identification of any exception should be left to Congress.**

*Id.* at 376–77 (emphasis added). The District Court therefore erred by ordering an offset that exceeds the statute adopted by Congress.

The District Court did not discuss or cite § 206(d)(4) in its Remedial Order or in its subsequent 2023 Opinion and Order, despite Appellants' repeated emphasis on the statute in their arguments below. (Launderville's Memorandum re Contribution and Indemnity p. 12; Plaintiffs' Motion to Reconsider filed 1/16/23 p. 4). Instead, the District Court cited *Lehr v. Perri*, No. 2:17-CV-1188, 2019 WL 1556672 (E.D. Cal. Apr. 10, 2019), as support for offsetting Launderville's benefits. (Remedial Order p. 26.) *Lehr* allowed a beneficiary's plan benefits to be offset by liability she was required to pay *to the plan* as a breaching fiduciary, *Lehr*, 2019 WL 1556672 at *5, which is exactly what § 206(d)(4) allows when the liability is owed *to the plan* (although the court in *Lehr* also failed to cite the statute). *Lehr* did not allow one culpable co-fiduciary to charge his claim for contribution against the plan benefits of another co-fiduciary. It therefore provides no support for the District Court's offset against Launderville's benefits, or for expanding the scope of § 206(d)(4).

The District Court also looked to § 257 of the Restatement (Second) of Trusts (Remedial Order p. 26), which states, "If a trustee who is also one of the beneficiaries commits a breach of trust, **the other beneficiaries** are entitled to a charge upon his beneficial interest to secure their claims against him." (emphasis added.) Laumeister and CTC are not "other beneficiaries" of the Plan, and would therefore not be entitled to anything under § 257 of the Restatement, even if it were to apply. The Restatement therefore supports nothing more than what § 206(d)(4) allows.

To the contrary, the policy considerations reflected in ERISA's anti-alienation provision weigh especially in Launderville's favor under the circumstances of this case. Launderville is a Plan participant who brought concerns about ERISA violations to light, contacted other participants about the concerns, and ultimately initiated and pursued litigation that has vindicated beneficiaries' rights and obtained a recovery for the entire Plan and its beneficiaries. If the end result of this case were to strip Launderville of her own benefits and saddle her with a debt to Laumeister or CTC, the outcome will stand as a glaring deterrent against efforts to enforce ERISA by others in similar circumstances. Employees who participate in ERISA plans and who also serve as co-fiduciaries—as Launderville did—will often have more access to plan information and be the best situated to learn of

potential violations and bring them to light for enforcement action. If the same employees face a threat of countersuit that can offset their own benefits and impose heavy liability (possibly in deliberate retaliation against them, or for strategic leverage by an employer or co-fiduciary in litigation), they will be more likely to remain silent about ERISA violations. This will severely undermine ERISA's stated purposes of protecting "interests of participants in employee benefit plans and their beneficiaries," and "providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

Even apart from the particular policy considerations in this case, the text of ERISA § 206(d) and the Supreme Court's instructions in *Guidry* are clear. The statute controls the decision of this case, and its exception cannot be expanded beyond its text. It does not allow an offset against Launderville's benefits because her liability does not run "to the plan." The District Court's order offsetting her benefits must therefore be reversed.

### B. The offset would allow Laumeister and CTC to keep funds owed to the Plan, in violation of ERISA.

A second fatal problem with the offset against Launderville's Plan benefits is that it would allow Laumeister and CTC to retain a portion of the funds they owe to the Plan in repayment, in violation of multiple ERISA restrictions. A critical point to recognize is that the District Court's order

reduces Laumeister and CTC's liability owed *to the Plan*, based on Launderville's liability to them in contribution. This Court has already determined that under ERISA § 409(a), 29 U.S.C. § 1109(a), Laumeister and CTC must restore the Plan's losses in full. *Browe I*, 15 F.4th at 199. ERISA § 403(c) further provides that "the assets of a plan *shall never inure to the benefit of any employer* and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan," and § 406(b)(1) states that a fiduciary "shall not . . . deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. §§ 1103(c), 1106(b)(1) (emphasis added).

All of these ERISA mandates are violated if Laumeister or CTC is allowed to retain funds they owe to the Plan by virtue of an "offset." Instead of repaying the Plan in full, they would be allowed to keep a portion of what rightfully belongs to the Plan, which they misappropriated years ago. The offset order must therefore be reversed.

## II. The allocation of liability between Laumeister and Launderville does not follow applicable trust law.

The District Court also erred in its decision to allocate liability 50/50 between Laumeister and Launderville, for purposes of Laumeister and CTC's contribution claim. Prior to the first appeal, the District Court

allocated 60% of the liability to Laumeister and 40% to Launderville. (2018 Opinion and Order p. 19.) On appeal, this Court gave the District Court an opportunity to revisit the allocation of liability on remand:

> Because we have ordered the district court to recalculate the restoration award, the district court may choose to revisit the allocation issue. We therefore do not consider whether the district court appropriately apportioned fault between Launderville and Laumeister, and we express no view on that issue.

*Browe I*, 15 F.4th at 201–02. On remand, the District Court re-apportioned fault on a 50/50 basis between Laumeister and Launderville, with no liability assessed against CTC. This revised allocation was error for multiple reasons, based on applicable principles of trust law applied to the District Court's findings.

This Court has looked to common law trust principles, including those embodied in the Restatement of Trusts, for guidance on issues of contribution among ERISA co-fiduciaries. *Browe I*, 15 F.4th at 201. Section 258 of the Restatement (Second) reads:

> (1) Except as stated in Subsection (2), where two trustees are liable to the beneficiary for a breach of trust, each of them is entitled to contribution from the other, except that

>> (a) if one of them is substantially more at fault than the other, he is not entitled to contribution from the other but the other is entitled to indemnity from him; or

>> (b) if one of them receives a benefit from the breach of trust, the other is entitled to indemnity from him to the

extent of the benefit; and for any further liability, if neither is more at fault than the other, each is entitled to contribution.

(2) A trustee who commits a breach of trust in bad faith is not entitled to contribution or indemnity from his co-trustee.

RESTATEMENT (SECOND) OF TRUSTS § 258.  The more recent Restatement (Third) of Trusts clarifies that if neither trustee is substantially more at fault, and to the extent that neither is entitled to indemnity, their contribution rights and obligations are apportioned according to their respective degrees of fault.  RESTATEMENT (THIRD) OF TRUSTS § 102(1) and comment b(3).

The District Court's 50/50 allocation of liability between Laumeister and Launderville fails to properly apply the rules outlined above in three respects: (1) failing to allocate any liability to CTC as a co-fiduciary; (2) ignoring the benefit to Laumeister and CTC of their breaches; and (3) ignoring the court's own findings in assessing the respective degrees of fault.

## A.    CTC must be included in the allocation.

The District Court's first error in the allocation of liability is its failure to assign any share of liability to CTC as a co-fiduciary.  This Court held in the previous appeal that CTC, as a co-fiduciary, is jointly and severally liable with Laumeister for breach of their fiduciary duties to the Plan.

*Browe*, 15 F.4th at 200–01.  On remand, Launderville requested that CTC, as a co-fiduciary found liable for breaching its duties, be included in the allocation of liability for purposes of contribution.  (Launderville's Memorandum re Contribution and Indemnity p. 10.)  The District Court allocated no share of liability to CTC, with no explanation.  (2022 Remedial Order pp. 20-26.)  Under principles of trust law, all culpable fiduciaries must be included.  For example:

> If three co-trustees participate in a breach of trust and are substantially equally at fault, one who makes good the breach is entitled to reimbursement from each of the others for one-third (thereby achieving a total contribution of two-thirds) of the liability.

RESTATEMENT (THIRD) OF TRUSTS § 102 comment b(1).  CTC, having already been found jointly and severally liable for breach of its fiduciary duties, must therefore be allocated a share of liability.

Although the court found that CTC was "dissolved" in 2014 (2018 Findings p. 18), this does not mean that CTC is insolvent, or no longer exists, or has no assets to contribute.  *See* 11A V.S.A. § 14.05 (providing that a dissolved corporation "continues its corporate existence" and may thereafter collect its assets and take steps to wind down).  To the contrary, the record in this case includes a sworn statement by Laumeister that CTC *does* have assets, including real estate appraised at more than $400,000.

(Second Certification of CTC Corp. and Laumeister filed 10/18/16 p. 2.)
The court made no finding of insolvency.

As an employer-fiduciary who maintained an illegal Plan and spent the Plan's assets on its operations, in a blatant act of self-dealing, CTC bears substantial responsibility. The District Court's allocation of fault must therefore be vacated, and liability reapportion with CTC included.

**B.   The benefits to Laumeister and CTC from the breach must taken into account.**

A co-trustee who has received a benefit from a breach of trust is not entitled to contribution, to the extent of the benefit. RESTATEMENT (SECOND) OF TRUSTS § 258(1)(b)  This principle is further explained in the Restatement's illustrations:

> 5.   A and B are trustees for C. B improperly delegates the administration of the trust to A. A misappropriates $1000 of the trust property. If A makes good the loss he is not entitled to recover anything from B. If B makes good the loss he is entitled to recover $1000 from A.

> 6.   A and B are trustees for C. A misappropriates $1000 of the trust property. B subsequently learning of the misappropriation fails to take steps to recover from A, and B is compelled to make good the loss. B is entitled to recover $1000 from A.

RESTATEMENT (SECOND) OF TRUSTS § 258 comment f, illustrations 5 & 6.  The same principle is reflected in the Uniform Trust Code: "A trustee who received a benefit from the breach of trust is not entitled to contribution from another trustee to the extent of the benefit received."  Uniform Trust

Code § 1002(b). In the simplest terms, the trustee who takes property from a trust is the one responsible for paying the trust back.

Laumeister and CTC are therefore not entitled to contribution from Launderville to the extent of the benefit they received from the breach of their fiduciary duties. The District Court, however, failed to take into account the benefit to Laumeister or CTC.

1. The benefit to Laumeister and CTC.

Laumeister's misappropriation of the Plan's assets was not disputed in this case, and was recognized by this Court in the previous appeal. *Browe I*, 15 F.4th at 192, 199, 201 & n. 7, 15. As the co-trustee who misappropriated assets—to the exhaustion of the Plan—Laumeister is not entitled to contribution to the extent of the benefit he received.

Although the Plan's assets were found to have been diverted to CTC rather than held by Laumeister in his personal capacity, this distinction makes no difference in assessing Laumeister's contribution rights. Both ERISA and the Restatement recognize that a fiduciary who diverts plan assets into a business he owns—as Laumeister did—is unlawfully benefiting himself. ERISA's rule against self-dealing prohibits a fiduciary from transferring plan assets to a "party in interest," 29 U.S.C. § 1108(1)(D), the definition of which includes any corporation of which the fiduciary owns

50% or more of the voting power or shares. *Id.* at § 1002(14)(G). The Restatement recognizes the same principle. A trustee "cannot properly use trust money in his business." RESTATEMENT (SECOND) OF TRUSTS § 170 comment l. Doing so is as much a violation of the duty of loyalty as transferring funds to himself individually.

ERISA's party-in-interest definition and Restatement § 170 both recognize the economic reality that a diversion of assets to a fiduciary's business—even if the business is incorporated—benefits the fiduciary who owns the business. Courts dealing with co-fiduciary liabilities cannot ignore these rules or the economic reality behind them, or else a fiduciary could reduce his share of liability simply by diverting assets into a wholly owned corporation instead of into an account in his own name, claiming that he therefore received no "benefit." The result would be absurd. Laumeister was the sole owner of CTC (2018 Findings p. 3), and the benefit to himself of investing Plan funds in his wholly owned business to prop it up cannot be ignored. The misappropriated assets therefore benefited both CTC and Laumeister as its owner.

The District Court reasoned that Laumeister and CTC "did not benefit" from their breaches because CTC was losing money when Laumeister diverted the Plan's assets. (2022 Remedial Order p. 23.) This

reasoning confuses *benefit* with *profit*. A fiduciary who misappropriates assets, but then squanders them on poor investments, has still received a benefit. He has received the value of the assets and the opportunity to invest them as he chooses. He has simply wasted that benefit, and failed to *profit* from it. By the District Court's reasoning, a fiduciary who raids a trust and then wastes the assets on losing bets at a horse track would be treated as receiving "no benefit" from the breach, and would remain free to seek contribution from other co-fiduciaries who received none of the assets.

Laumeister admitted that he took Plan assets and invested them in CTC on the hope that CTC's performance would "turn around," as he understood to be the "industry's forecasts." (Transcript 3/6/18 p. 33.) That his hopes of a profitable turnaround proved wrong do not mean that he received no benefit from Plan assets. It means that he wasted the benefit of those assets by gambling them on his own business, an act which was both self-interested *and* imprudent. An ERISA fiduciary who misappropriates assets for an imprudent investment is doubly culpable: he has breached the rule against self-dealing *and* breached the prudent investor standard imposed by 29 U.S.C. § 1104. The additional breach makes him more culpable; it is not a reason to ignore the benefit he received by taking and using the assets.

Nor does the failure of CTC's business negate the fact that CTC also received the benefit of the Plan funds. The funds were deposited in CTC's accounts and used to pay its operating expenses. There can be no dispute that this was a benefit, even if CTC still declined and failed as business.

Moreover, Laumeister admitted that by taking Plan assets, he limited and delayed the loss of his own personal funds to keep CTC afloat. He testified that his loans to CTC were made only after "we were out of other asset money."[1] (Transcript 12/7/17 p. 32.) By using Plan assets to fund his failing business, Laumeister was able to delay and reduce the use of his personal funds until the Plan's assets were spent. The District Court's conclusion that Laumeister and CTC received no benefit was therefore error, and requires that the allocation of fault be vacated for failure to take the benefit into account under applicable trust law.

2.     The benefit to Launderville.

This Court, in the prior appeal, noted the District Court's findings that the breach of trust also benefited Launderville because she held a lucrative position at CTC. *Browe I*, 15 F.4th at 201. The question this

---

1. "Other asset" is the term Laumeister used to refer to Plan funds. (Transcript 12/6/17 pp. 69, 74; Transcript 12/7/17 pp. 45–46.)

leaves, for purposes of the contribution rules, is the value of the benefit actually received by Launderville as a result of the breach.

Laumeister and CTC admitted that it would be "impossible if not impracticable" to determine whether any Plan funds ever contributed to Launderville's compensation at CTC. (Defendants' Memorandum in Support of Motion for Judgment re: Contribution & Indemnity [corrected, filed 8/30/22] p. 17.) They provided no means and no evidence to determine whether the use of Plan funds by CTC actually impacted Launderville's compensation or any other aspect of her employment. The District Court also observed:

> Although Defendants are correct that Plaintiff Launderville benefited from Defendants' breaches of trust because she continued to receive her salary, she received no benefit to which she was not otherwise entitled. The salary and benefits she received during this time period were not increased and were consistent with her existing employment relationship with CTC. To hold that she must pay back her salary and benefits to Defendants, who are also wrongdoers, would be to effectively require her to have worked for free. This would undoubtedly be unlawful under the existing wage and hours laws, and it would reward Defendants for their wrongdoing.

(2022 Remedial Order p. 25.) The District Court therefore correctly concluded that Laumeister and CTC are not entitled to any indemnity from Launderville for the value of any benefit received by her.

The entire Plan fund was lost to Laumeister's diversion of the assets to his own business, to the benefit of himself and CTC.  Laumeister and CTC are therefore not entitled to contribution from Launderville to the extent of that benefit.  It was error for the District Court to ignore that benefit in its allocation of fault.  The allocation must therefore be vacated.

## C.    Respective degrees of fault.

After applying the rule above regarding the extent of the benefit received from the breach of duties, any remaining liability should be allocated among co-fiduciaries according to their respective degrees of fault.  RESTATEMENT (THIRD) OF TRUSTS § 102(1) and comment b(3).  As noted above, this Court expressed no opinion on the 60/40 apportionment of fault made prior to the first appeal. *Browe I*, 15 F.4th at 202.  The District Court's revised apportionment of fault on remand increased Launderville's share of liability, and assigned equal degrees of fault to Laumeister and Launderville.  This was error, because it disregards the court's own findings that must be considered under applicable trust law principles.

The Restatement provides the following non-exclusive lists of factors to consider in determining co-fiduciaries' respective degrees of fault:

> Among the factors to be considered are the following: (1) Did one trustee mislead the other(s) into joining in the breach? (2) Did

38

one trustee commit the breach intentionally . . . , while the other(s) did so by simple negligence? (3) Did one trustee, having greater experience or expertise, essentially control the actions of the other(s), such as where a trustee without business experience regularly relied on the judgment of the experienced trustee? (4) Did one trustee act essentially alone while the joint and several liability of the other(s) resulted merely from a failure to exercise reasonable care to prevent the breach or from improper delegation or monitoring?

RESTATEMENT (THIRD) OF TRUSTS § 102 comments b(2) and (3). In assessing respective degrees of fault, the District Court ignored and even contradicted its own findings.

First, the court originally found that "neither Plaintiff Launderville nor Defendant Laumeister knowingly breached a fiduciary duty, but both affirmatively enabled each other's breaches." (2018 Opinion and Order p. 15.) Similarly, it found that the Plan administrators (including Launderville) held a "good faith, mistaken belief that the Plan was a nonqualified 'top hat' plan," and their fiduciary breaches "were attributable to negligence and ignorance as opposed to willful noncompliance with ERISA." (2018 Opinion and Order p. 9.) Despite these original findings, the court's analysis on remand asserts the complete opposite: that Launderville's "conduct was knowing, voluntary, and intentional and not merely negligent." (2022 Remedial Order p. 22.) The court relied on this

premise—contradicted by its own original fact-finding—to justify an increase in Launderville's share of fault.

The court's original factual findings on the subject of co-fiduciary liability—including Launderville's lack of knowing or intentional noncompliance—were not challenged on appeal, and no additional evidence on the subject was taken on remand. Although this Court invited the District Court to revisit the allocation of fault, this by itself does not give any legitimate reason to discard previous factual findings and replace them with contradictory assertions on remand.

Moreover, this Court made its decision to allow Launderville to be held liable based on the original findings of fact on the issue. The issues of fact on this point were therefore impliedly resolved on appeal, and therefore cannot be contradicted on remand under the mandate rule. *See In re Coudert Bros. LLP*, 809 F.3d 94, 9 (2d Cir. 2015) (explaining that "issues impliedly resolved" are within the scope of the mandate rule). The District Court's re-apportionment of fault must therefore be vacated and reconsidered in light of the original findings.

Second, the District Court failed to consider its original findings regarding the history of the Plan. The Plan was created in 1990.[2] (2018 Findings p. 9.) By its terms, the Plan was unfunded and treated as an asset of CTC (2018 Findings p. 40; Defendants' Trial Exhibit A p. 4.) From the Plan's inception, therefore, Laumeister and CTC violated their fiduciary duty to hold funds in separate trust. 29 U.S.C. § 1103(a). Had they not committed this breach in the first place, the Plan would have been protected in trust from the start. Launderville had no role as a Plan administrator until years later.[3] Thus, it was Laumeister and CTC's violations of ERISA beginning in 1990, years before Launderville's involvement, which put the Plan in jeopardy by failing to hold funds in trust, leaving the door open for misappropriation in CTC's later years of decline. When Launderville became involved, the Plan had already been mischaracterized as a top hat plan, leading Launderville to treat it as such.

---

2. As this Court explained in the first appeal, this case does not involve two different deferred compensation plans, but rather one plan governed by two agreements at different times. *Browe I*, 15 4th at 185 n.1.

3. The District Court made inconsistent findings about when Launderville became a Plan administrator. The court found that her position as a CTC director gave rise to her status as a Plan administrator. (2018 Findings p. 54.) At one point, the court stated that she became a director after another CTC director, Wayne Massari, had a stroke (*id.* at 10), which was not until 1999. (*Id.* at 8.) At another point, however, the court stated that she was a director as of December 1995. (*Id.* at 21.) Whichever is accurate, it was not until years after the Plan was created.

Even if this resulted from a mistake by Laumeister and CTC rather than intentional deception on their part, it is still relevant to both the first and fourth factors listed by the Restatement for apportioning fault.

Third, the District Court gave short shrift to its prior finding that, "[a]t all times, [Laumeister] held a superior position to Plaintiff Launderville and was able to exert control over her Plan decision-making." (2018 Opinion and Order p. 18.)  Laumeister went so far as to keep the Plan's funds on account at a financial firm where they were combined with his personal assets for "investment purposes." (2018 Findings pp. 18, 22, 31; Transcript 12/6/17 p. 48–51; Transcript 3/5/18 p. 41.)  He admitted he had the power and authority to control the accounts, as confirmed by records from the firm where they were held.  (Transcript 12/6/17 pp. 48–54; Plaintiffs' Trial Exhibit 27.)  These facts, especially when combined with his role as the "primary Plan decision-maker," (2022 Remedial Order p. 22), and that it was he who "made the decision to use Plan funds to pay CTC's operating expenses . . ." (2018 Opinion and Order p. 18), implicate the Restatement's second, third, and fourth factors, and must shift fault to Laumeister.

Finally, the District Court criticized Launderville's decision to contact other Plan participants and initiate suit with other Plaintiffs.  (2022

42

Remedial Order p. 23.)  The court made a point of questioning whether Launderville "disclosed her role in Plan administration" to other participants when bringing her claims (*id.*), contradicting its own prior finding that she was openly identified as an administrator, in writing, to all participants.  (2018 Findings p. 10.)

Even if fault is found in Launderville's failure to act *sooner*, the District Court should still have considered that her notification of other participants and her initiation of this suit are the very conduct that ERISA is designed to promote.  It is because of Launderville's action that numerous Plan beneficiaries' rights under ERISA have been vindicated, while Laumeister and CTC sought to deny those same rights.  These are the same policy considerations discussed above in Part I(A) of this Argument regarding the offset of Launderville's benefits.  An allocation of liability that fails to account for Launderville's action in vindicating ERISA rights will deter other would-be whistleblowers in situations similar to Launderville's from pursuing enforcement of ERISA, undermining the statute's purpose.

For all the reasons explained above, the District Court's allocation of fault should be vacated.

### III. The District Court did not account for all growth in the Plan fund balance.

The District Court's award to the Plan fails to fully restore the Plan's losses, because it fails to account for actual growth in the Plan's balance in the years before Laumeister misappropriated the funds. In the previous appeal, this Court instructed the District Court to capture all losses to the Plan through the date of judgment, *Browe I*, 15 F.4th at 199, and to "craft a remedial scheme that takes into account the vested rights of participants after conducting, to the extent necessary, any additional fact-finding." (*Id.* at 206).

A district court's actions on remand from an appellate court "should not be inconsistent with either the express terms or the spirit of the mandate." *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir. 1992). "The mandate rule flows from the law-of-the-case-doctrine." *United States v. Bryser*, 95 F.3d 182, 185 (2d Cir. 1996). It precludes re-litigation both of "matters expressly decided by the appellate court" and of "issues impliedly resolved by the appellate court." *In re Coudert Bros. LLP*, 809 F.3d at 99 (internal quotation omitted). The District Court's recalculation of the Plan's projected balance misapplied the law of the case doctrine, resulting in a failure to capture all of the Plan's losses, contrary to this Court's Mandate.

To recalculate the award to the Plan on remand, the District Court accepted the methodology presented by Plaintiffs' expert, Richard Heaps. (Entry Order filed 6/7/22 p. 2.)  This methodology, described as Mr. Heaps' "Table 4," divided the Plan into individual account shares for participants, using percentages shown in one of CTC's records. (*Id.*; Plaintiffs' Trial Exhibit 42; Transcript 6/3/22 pp. 24, 29.)  Mr. Heaps then projected the balance forward to March 2022 (near the date of trial on remand) with reasonable investment gains, and with individual participants' shares broken out.  (Transcript 6/3/22 p. 29.)  Mr. Heaps' projection also made adjustments for account withdrawals paid to individual participants, based on another CTC record.  (*Id.* p. 26; Plaintiffs' Trial Exhibit 41.)  These adjustments were necessary in order to accurately reflect participants' relative shares in the total fund being restored in the Plan, in which they have vested rights.

Mr. Heaps' Table 4, as originally presented, also accounted for growth in the Plan's actual balance to a figure of $374,197 as of the end of the year 2000. (Transcript 6/3/22 p. 11, 22, 31.)  Laumeister testified to this balance at trial, with confirmation from CTC's tax returns.  (Transcript 12/6/17 pp. 72–74; Defendants' Trial Exhibit B1.)  This actual balance for the year 2000 is approximately $50,000 higher than what Mr. Heaps had previously

projected, prior to the first bench trial in this case. (Plaintiffs' Trial Exhibit 26.)

The District Court, although it accepted Mr. Heaps' methodology and his projected rates of return, refused to allow any adjustment in the Plan's favor for the actual year-2000 balance above. (Transcript 6/3/22 pp. 103–05; Plaintiffs' Memorandum in Support of Motion to Modify Order filed 6/21/22 p. 4; Index on Appeal p. 25, 6/30/22 Order.) The court reasoned that doing so would violate the law of the case. (Entry Order filed 6/7/22 p. 1–2.)

The District Court's reasoning stems from a misconception of Plaintiffs' argument. The court mistook Plaintiffs' argument to be a challenge to the court's previous finding of the Plan's 1997 balance (referred to as the "Base Amount" in the court's orders). (Entry Order filed 6/7/22 p. 1–2; 2018 Opinion and Order p. 8.) Plaintiffs made no such challenge. They agreed (and still agree) that the Base Amount of $261,388.14 is the correct balance of the Plan as of 1997. (Plaintiffs' Memorandum in Support of Motion to Modify Order filed 6/21/22 p. 5; Transcript 6/3/22 p. 103.) The adjustment supported by Plaintiffs for the actual year-2000 balance is necessary to fully account for growth in the Plan fund *between* 1997 and 2000. Accounting for that post-1997 growth is necessary to fully restore

the Plan's losses, and would not disturb the previous finding of the 1997 balance. It was therefore error for the Court to refuse the adjustment.

Even though an adjustment for the actual year-2000 balance alters the path of the Plan's balance from the projection used before the first appeal, the same is true for Plan benefit withdrawals, which the court took into account on remand. Both are necessary to accurately recalculate the restoration award and establish the shares of participants' in which they have vested rights. The court cannot refuse adjustments on remand that would increase the balance, and which would thereby benefit the Plan and participants, while allowing adjustments that decrease the balance to the Plan's detriment.

Admittedly, it is unknown how much of the Plan's growth through year-end 2000 was the product of additional contributions, or investment gains, or both. That uncertainty, however, is irrelevant. Whatever the source of the Plan fund's growth, it must all be included to fully capture what the Plan lost.

The court also expressed resistance to the year-2000 balance adjustment, on the ground that the balance was "disputed" on remand. (Transcript p. 105.) The only "dispute," however, was Defendants' opposition to the number in argument. They pointed to no evidence

offered on remand or elsewhere in the record that would cast any doubt on the number, which came from Laumeister's own testimony and CTC's tax returns. Even if there were uncertainty about the figure, the uncertainty must be resolved against CTC and Laumeister and in favor of the Plan. *See Browe I*, 15 4th at 198 (observing "the cardinal rule that uncertainties in fixing damages are to be resolved against the breaching fiduciary"). The District Court's recalculation of the restoration award must therefore be vacated for the limited purpose of adjusting for the actual balance of the Plan fund as of the end of the year 2000.

## IV. Launderville and Browe's claims for denial of benefits were timely.

The District Court erred by dismissing Launderville and Browe's claims for wrongful denial of benefits under ERISA § 502(a)(1)(B) on statute of limitations grounds. (2022 Remedial Order p. 18.) This error by the District Court had no impact on the relief ultimately granted, because Browe and Launderville were still found entitled to their benefits on other grounds. (*Id.* pp 19, 27.) Unfortunately, however, the District Court also stated in its orders that its decision on the statute of limitations defense may preclude or limit Plaintiffs' ability to seek attorneys' fees, and could even result in liability for Defendants' attorneys' fees. (*Id.* p. 19 n.4; 2023

48

Opinion and Order p. 5.)  Because of this statement by the court regarding

the impact of its decision, Appellants cannot ignore the issue in this appeal.

This Court should first examine whether it would be proper for the

dismissal of Browe and Launderville's wrongful denial claims to impact an

award of attorneys' fees.  If the answer is no, then this Court may refuse to

exercise jurisdiction over the dismissal decision, because it would not affect

any aspect of the case's outcome. *See Davis v. Velez*, 797 F.3d 192, 213 (2d

Cir. 2015) (declining to consider an issue on appeal that would not affect

the judgment entered).  If, on the other hand, the answer is yes, then the

Court should review the issue because of its effect on Appellants' claims for

fees.

For a court to award attorneys' fees under ERISA § 502(g)(1), the fees

claimant must show "some degree of success on the merits." *Hardt v.*

*Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010).  This Court has

also long held that in ERISA cases, "granting a prevailing plaintiff's request

for fees is appropriate absent some particular justification for not doing so."

*Donachie v. Liberty Life Assur. Co. of Boston*, 745 F.3d 41, 47 (2d Cir.

2014) (internal quotation omitted).  Under these rules and the

circumstances of this case, it would not be proper for the dismissal of

Launderville and Browe's wrongful denial claims to impact Plaintiffs' eligibility for a fee award.

Plaintiffs initiated this lawsuit and have pursued their claims as a group, and have been represented by the same common counsel throughout this litigation. They brought claims on behalf of the entire Plan, and have won the relief they sought—full repayment—for the benefit of the entire Plan, including their own shares in the Plan. The dismissal of Launderville and Browe's wrongful denial counts has no impact on the relief Plaintiffs have secured on the merits. It therefore should have no impact on an eventual determination of claims for attorneys' fees. If this Court agrees, it may decline to exercise jurisdiction over the issue.

Alternatively, the Court may find that even if the statute of limitations against Browe and Launderville falls outside the scope of this appeal, it may still be reviewed in a subsequent appeal on the issue of attorneys' fees. *See In re PCH Assocs.*, 949 F.2d 585, 593 (2d Cir. 1991) (describing the appellate court's authority to review questions left unanswered in a prior appeal). If that is the case, then review of the issue is unnecessary in this appeal.

Should this Court disagree, however, and decide to review the dismissal of Browe and Launderville's wrongful denial claims because of a possible impact on attorney fee awards, then it must reverse the District Court's dismissal of the claims, because they are not time-barred. An ERISA denial of benefits claim "accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits." *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999). The six-year limitations period applied by the District Court is not disputed. (2022 Remedial Order p. 13.) On the facts found by the District Court, neither Browe nor Launderville's claim accrued more than six years before they filed suit in late 2015.

The District Court cited its previous findings for the premise that, "[a]s of February 2008, Plaintiffs Browe and Launderville both knew that 'CTC's cash flow was insufficient to pay its general creditors or to fund its deferred compensation accounts.'" (2022 Remedial Order p.17; 2018 Findings p. 18.) The court then treated this knowledge as the legal equivalent to receiving a "clear repudiation" of their entitlement to benefits, sufficient to trigger the limitations period. The court pointed to no other

findings to support a "clear repudiation." This reasoning ignores the District Court's own contrary findings.

The District Court previously found that Laumeister repeatedly promised Browe and Launderville—orally and in writing—that they *would* receive their deferred compensation benefits, and that he did so even as late as 2015. (2018 Findings pp. 28–29; Plaintiffs' Trial Exhibit 10.) His assurances were the diametric *opposite* of a clear repudiation of their benefits. The court found that in one 2015 email, Laumeister assured Launderville that, "I did promise to personally fulfill your deferred comp," (2018 Findings p. 29.) Launderville and Browe's awareness of the misuse of Plan funds and CTC's poor condition may have raised uncertainty about the *source* of funding for their Plan benefits, but given Laumeister's repeated promises to fulfill their benefits (even from his own personal funds), it cannot be characterized as a clear repudiation. Browe and Launderville filed suit in 2015 with the other Plaintiffs, in the same year Laumeister made the promise above. The dismissal of their claims as time-barred must therefore be reversed.

52

## **CONCLUSION**

For the foregoing reasons, this Court must:

(1) Reverse the District Court's decision offsetting CTC and Laumeister's counterclaim against Launderville's benefits;

(2) Vacate the allocation of fault between Laumeister and Launderville, and remand the case for an allocation of fault that includes CTC as a co-fiduciary, accounts for benefits received by Laumeister and CTC for their breaches, and is consistent with applicable trust law principles and the facts originally found by the District Court as explained above;

(3) Vacate the recalculation of the restoration award to the Plan, and remand for the limited purpose of including the year-2000 adjustment sought by Plaintiffs in the calculation of the award; and

(4) Reverse the District Court's judgment denying Browe and Launderville's denial of benefit claims on statute of limitations grounds, and render judgement in Browe and Launderville's favor on those claims, unless the Court determines that review of the issue in this appeal is unnecessary.

Dated: December 18, 2023

*/s/ John D. Stasny*
John D. Stasny, Esq.
WOOLMINGTON, CAMPBELL, BENT & STASNY, P.C.
*Attorney for Plaintiffs-Appellants*
4900 Main Street, PO Box 2748
Manchester Center, VT 05255
(802) 362-2560

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 28.1(e)(2)(A)(i) and 32(a)(7)(B)(i), and with Local Rule 28.1.1(a), because this brief contains 10,157 words, excluding items listed in Federal Rule of Appellate Procedure 32(f) .

This brief complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Georgia font.

Dated:  December 18, 2023

*/s/ John D. Stasny*
John D. Stasny, Esq.
WOOLMINGTON, CAMPBELL, BENT & STASNY, P.C.
*Attorney for Plaintiffs-Appellants*