# NO. 23-1215 (L);

### 23-1250(XAP)

---

## United States Court of Appeals
## for the
## Second Circuit

---

DONNA BROWE, TYLER BURGESS, BONNIE JAMIESON, PHILIP JORDAN, ESTATE OF BEVERLY BURGESS,

*Plaintiffs-Appellants-Cross-Appellees,*

LUCILLE LAUNDERVILLE,

*Plaintiff-Counter-Defendant - Appellant-Cross-Appellee,*

-against-

CTC CORPORATION and BRUCE LAUMEISTER

*Defendants-Counter-Claimants - Appellees-Cross-Appellants.*

_____

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT DISTRICT OF VERMONT*

---

**RESPONSE AND REPLY BRIEF FOR APPELLANTS**
_____

John D. Stasny, Esq.
WOOLMINGTON, CAMPBELL, BENT & STASNY, P.C.
*Attorney for Donna Browe, Tyler Burgess, Bonnie Jamieson, Philip Jordan, Estate of Beverly Burgess, and Lucille Launderville*
4900 Main Street, PO Box 2748
Manchester Center, VT 05255
(802) 362-2560

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... 4

STATEMENT OF THE ISSUES.................................................................. 7

STATEMENT OF THE CASE ..................................................................... 8

SUMMARY OF THE ARGUMENT.............................................................. 9

STANDARD OF REVIEW ......................................................................... 13

ARGUMENT............................................................................................. 14

I.    Defendants' opposition to the District Court's remedial scheme fails for of lack statutory and Constitutional standing. ................................... 14

   A.    Defendants lack statutory standing to oppose the District Court's order..................................................................................................... 14

   B.    Defendants' cross-appeal also fails for lack of standing under Article III of the Constitution................................................................ 19

II.   Defendants' arguments on cross appeal do not show any reversible error. ...................................................................................................... 24

   A.    The statute of limitations does not prohibit distributions of Plan benefits to Browe and Launderville. .................................................... 25

B.   Distributing benefits to Browe and Launderville does not render the statute of limitations meaningless. ................................. 27

C.   The District Court's adherence to ERISA § 4044(c) is not error. . 28

D.   Browe and Launderville's claims were timely. .............................. 31

E.   Launderville's actions as a co-fiduciary do not require the she be excluded from the remedial scheme. ................................... 32

III.   Reply arguments in support of Plaintiffs' appeal. ......................... 32

A.   The offset of Launderville's benefits violates ERISA's anti-alienation statute. ................................................................. 32

B.   Defendants' arguments regarding the allocation of fault are not supported by the record. .................................................... 36

C.   The District Court's recalculation of the award to the Plan must be vacated. ............................................................... 39

D.   Browe and Launderville's § 502(a)(1)(B) claims were timely filed. ....................................................................... 40

CONCLUSION ............................................................... 42

# **TABLE OF AUTHORITIES**

**Cases**

*Browe v. CTC Corp.*,

    15 F.4th 175 (2d Cir. 2021).............9–10, 17, 22–23, 30, 35–36, 38–39, 41

*Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*

    201 F.3d 44 (2d Cir. 1999).......................................................................40

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016)................... 13

*Chemung Canal Tr. Co. v. Sovran Bank/Maryland*, 939 F.2d 12

    (2d Cir. 1991) ........................................................................................ 35

*Chuck v. Hewlett Packard Co.*, 455 F.3d 1026 (9th Cir. 2006) ............25–26

*Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202

    (9th Cir. 2011).......................................................................................... 16

*Daniel v. Eaton Corp.,* 839 F.2d 263 (6th Cir.1988) ...................................17

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC),*

    *Inc.*, 528 U.S. 167 (2000)........................................................................ 18

*Garren v. John Hancock Mut. Life Ins. Co.,* 114 F.3d 186

    (11th Cir.1997)......................................................................................... 16

*Guidry v. Sheet Metal Workers Nat. Pension Fund*,

    493 U.S. 365 (1990)................................................................................ 33

*Hall v. LHACO, Inc.*, 140 F.3d 1190 (8th Cir. 1998) .............................20–21

*Hall v. Nat'l Gypsum Co.*, 105 F.3d 225 (5th Cir. 1997)..........................16–17

*Larson v. United Healthcare Ins. Co.*, 723 F.3d 905 (7th Cir. 2013).......... 16

*Layes v. Mead Corp.*, 132 F.3d 1246 (8th Cir. 1998) ................................... 16

*Lehr v. Perri*, No. 2:17-CV-1188, 2019 WL 1556672

   (E.D. Cal. Apr. 10, 2019)........................................................................ 33

*Leonelli v. Pennwalt Corp.*, 887 F.2d 1195 (2d Cir. 1989) ...........................15

*Massachusetts Laborers' Health & Welfare Fund v. Starrett*

   *Paving Corp.*, 845 F.2d 23 (1st Cir. 1988)............................................... 18

*New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,

   798 F.3d 125 (2d Cir. 2015) .................................................................... 42

*Parker v. Bain*, 68 F.3d 1131 (9th Cir. 1995)........................................ 32, 34

*Schlaifer Nance & Co. v. Est. of Warhol,* 194 F.3d 323 (2d Cir. 1999) ....... 27

*United States v. Am. Ry. Exp. Co.*, 265 U.S. 425 (1924)........................ 11, 31

*Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945 (2019)...19–20

*Youngberg v. The Bekins Co.*, 930 F. Supp 1396 (E.D. Cal. 1996)..............34

## Statutes

ERISA § 3, 29 U.S.C. § 1002....................................................................... 23

ERISA § 206, 29 U.S.C. § 1056....................................................... 12, 33–36

ERISA § 403, 29 U.S.C. § 1103 ........................................... 11, 22–23, 28–29

ERISA § 502, 29 U.S.C. § 1132 ...........................................................passim

ERISA § 4041, 29 U.S.C. § 1341.....................................................................29

ERISA § 4044, 29 U.S.C. § 1344...........................................11, 22–24, 28–30

## Regulations

29 C.F.R. § 4044.4........................................................................................29

29 C.F.R. § 4044.10 .....................................................................................23

29 C.F.R. § 4044.41 .....................................................................................23

## Other Authorities

RESTATEMENT (THIRD) OF TRUSTS § 102.........................................................37

## <u>STATEMENT OF THE ISSUES</u>

Appellants' arguments in this Response and Reply Brief present the following additional issues:

1. Whether Appellees lack statutory standing to challenge the District Court's distribution of assets from the retirement plan at issue, because Appellees are no longer administrators of the plan.

2. Whether Appellees' cross appeal must be dismissed for lack of standing under Article III of the U.S. Constitution.

## **STATEMENT OF THE CASE**

Appellants included a Statement of the Case in their principal brief.

No supplementation of their original Statement of the Case appears

necessary for purposes of this Response and Reply Brief.

## SUMMARY OF THE ARGUMENT

On cross appeal, Appellees (referred to as "Defendants" in this brief) assign error to the District Court's "remedial scheme", in which the court ordered an allocation and distribution of assets from the ERISA deferred compensation plan at issue (the "Plan") to the Plan's various participants and beneficiaries. Specifically, Defendants oppose the District Court's decision to include Plaintiffs Donna Browe and Lucille Launderville in the distribution of Plan assets.

As argued below in Part I, Defendants lack both statutory and Constitutional standing to challenge the District Court's decision to include Browe and Launderville in the distribution of Plan assets. The lack of standing arises from the fact that, on remand after the previous appeal in this case, the District Court removed Defendants as administrators of the Plan. (A317.) This means that Defendants have no authority over the distribution of the Plan's assets, and therefore no standing to oppose the distribution adopted by the lower court.

Additionally, Defendants have been adjudged liable in this case to the Plan *as a whole*, for breach of their fiduciary duties. *Browe v. CTC Corp.*, 15 F.4th 175, 200 (2d Cir. 2021) ("*Browe I*"). Their liability to the Plan is calculated based on the total amount of Plan assets they misappropriated,

plus lost investment gains to the whole Plan. *Id.* at 199. The distribution of Plan assets to participants under the District Court's remedial scheme therefore has no impact on the calculation of Defendants' liability. Defendants therefore have no legal interest in how the Plan's assets are allocated and distributed, and no standing to challenge the distribution.

Part II of the argument below responds to Defendants' arguments on appeal. Contrary to Defendants' arguments, the statute of limitations applicable to § 502(a)(1)(B) claims does not prohibit the District Court from including Browe and Launderville in the distribution of Plan assets. The authority cited by Defendants does not support their arguments. Defendants also fail to recognize that § 502(a)(1)(B) is an enforcement mechanism, rather than the source of participants' substantive rights to Plan benefits, which are derived from the terms of the Plan and the other ERISA provisions that govern the Plan terms' interpretation and effect. The statute of limitations therefore does not prohibit the distribution of Plan assets to Browe or Launderville.

Moreover, as argued in Part III below, and in Plaintiffs' principal brief, the record shows that Browe and Launderville's § 502(a)(1)(B) claims were timely filed. Although that conclusion is contrary to what the district court found, it still provides an alternative basis to affirm the distribution of

benefits to Browe and Launderville, because the lower court's decision may be affirmed on any ground supported by the record. *United States v. Am. Ry. Exp. Co.*, 265 U.S. 425 (1924).

Defendants also claim error in the District Court's adherence to ERISA § 4044, 29 U.S.C. § 1344. Defendants fail to recognize, however, that the District Court ordered the termination of the Plan on remand (SA28), and that ERISA § 403(d)(1), 29 U.S.C. §§ 1103(d)(1), therefore expressly mandates that Plan assets be allocated according to § 4044.

Finally, Defendants argue that Launderville's conduct as a co-fiduciary requires that she be excluded from the distribution of assets. This argument, however, and the authority cited by Defendants in support, rests on the premise that there is some permissible basis to offset Launderville's Plan benefit by her liability on Defendants' counterclaim. As explained in Part III, below, and in Plaintiffs' principal brief, no such offset of Launderville's benefits is permitted. It was therefore not error to include her in the distribution of Plan assets.

Plaintiffs' reply arguments in support of their appeal are set out in Part III of this brief. On the issue of whether Launderville's Plan benefits can be offset by her liability on Defendants' counterclaim, Defendants present no authority that would permit the offset. The offset is expressly

prohibited by ERISA's anti-alienation provision at § 206(d), and does not fall within any exception to the statute because Launderville's liability is to Defendants, and is not owed to the Plan.

With respect to the allocation of fault among Laumeister, CTC, and Launderville as co-fiduciaries, Defendants fail to recognize the benefits to CTC and Laumeister from the breach of their fiduciary duties, and falsely assert that CTC has no assets to contribute. Defendants also attempt to repaint the facts against Launderville in increasingly extreme terms in order to support the allocation of fault against her, but their effort is not supported by the record.

With respect to the recalculation of the award to the Plan, Defendants presented no arguments beyond those already addressed in Plaintiffs' principal brief. Finally, on the subject of the statute of limitations applicable to § 502(a)(1)(B) claims, Defendants agree that the limitations period accrues only on a "clear repudiation" of plan benefits. They point to no "clear repudiation" that would have triggered the statute against Browe and Launderville.

This Court must therefore grant the relief requested in Plaintiffs' principal brief, and otherwise affirm the District Court's decision.

## STANDARD OF REVIEW

The issues of standing raised by Appellants present pure questions of law rather than factual disputes, and are therefore reviewed *de novo*. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

**ARGUMENT**

**I.** **Defendants' opposition to the District Court's remedial scheme fails for of lack statutory and Constitutional standing.**

In their cross appeal, Defendants challenge the District Court's remedial scheme to allocate and distribute the Plan's funds to participants. In particular, they oppose the decision to include Browe and Launderville in the distribution of the Plan's assets. Defendants, however, were removed from their role as administrators of the Plan after the first remand from this Court, and therefore have no standing to challenge the remedial scheme. Their only interest in this case at this stage concerns their total liability to the Plan, which they owe to the Plan as a whole, and which is not dependent on how the Plan's assets are subsequently distributed among participants. Defendants' entire cross-appeal must therefore be rejected for lack of both statutory standing and Constitutional standing.

**A.** **Defendants lack statutory standing to oppose the District Court's order.**

Defendants' cross-appeal arguments are premised on the notion that because Plaintiffs' lawsuit filed against them included wrongful denial of benefit claims under § 502(a)(1)(B), Defendants must then be able to oppose the District Court's remedial scheme by asserting a statute of limitations defense applicable to § 502(a)(1)(B) claims. The problem with

14

this premise is that Defendants were removed from their position as Plan administrators by order of the District Court on remand after the first appeal of this case.[1]  (A317.)  Because they are no longer Plan administrators, no § 502(a)(1)(B) claims exist that can lie against them, and they have no standing to assert "defenses" to any such claims.

The only permissible defendants in a dispute over the payment of benefits from an ERISA plan are the parties who have control over the distribution of plan assets to beneficiaries.  The rule is illustrated by this Court's holdings and reasoning in *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989), and *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125 (2d Cir. 2015).  In *Leonelli*, the Court stated that "only the plan and the administrators and trustees of the plan **in their capacity as such** may be held liable" in § 502(a)(1)(B) claims.  887 F.2d at 1199 (emphasis added).  Years later, in *UnitedHealth*, the Court

---

1. The court went on to state in its order that the administration of the Plan "shall be undertaken by the court unless it orders otherwise."  (A317.)  In its 2023 Opinion and Order, the court ordered the parties to confer on the identification of an escrow agent or receiver for Plan assets (SA39), and ordered the Plan's assets held in the trust account of Defendants' counsel in the interim.  (SA31.)  Before any other escrow agent or receiver was appointed, the court ordered a payment of the Plan assets from the trust account of Defendants' counsel to certain participants, and purportedly directed this order to "Defendants."  (SA41.) Although it was technically error to phrase the order so as to direct it at Defendants, that error was harmless and the point is now moot.  It does not change the fact that Defendants were unequivocally removed as administrators by order of the court.

held that a claims administrator (in addition to a *plan* administrator) is a proper defendant under § 502(a)(1)(B) if the claims administrator "exercises total control over claims for benefits under the terms of the plan." 798 F.3d 125, 132 (2d Cir. 2015). The Court reasoned that a claims administrator who exercises such total control and discretion over benefits claims is "a logical defendant in the type of suit contemplated by § 502(a)(1)(B)." *Id.*

Other Courts of Appeals have reached the same conclusion, on the same reasoning. *See Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013) ("By necessary implication, however, a cause of action for 'benefits due' must be brought against the party having the obligation to pay."); *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011) (holding that the party with authority over benefit claims was "a logical defendant for an action . . . to recover benefits due . . . under the terms of the plan"); *Layes v. Mead Corp.*, 132 F.3d 1246, 1249 (8th Cir. 1998) (dismissing an employer as a defendant in a § 502(a)(1)(B) claim because another party was the plan's "sole administrator"); *Garren v. John Hancock Mut. Life Ins. Co.,* 114 F.3d 186, 187 (11th Cir.1997) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan."); *Hall v. Nat'l Gypsum Co.*, 105 F.3d

225, 230 (5th Cir. 1997) (holding that a defendant was the proper party in a claim for payment of plan assets, where the defendant "is the entity which today controls the distribution of funds from the Plan's assets"); *Daniel v. Eaton Corp.,* 839 F.2d 263, 266 (6th Cir.1988) ("Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits").

A claim under § 502(a)(1)(B) is, by nature, a claim to recover assets payable *out of* an ERISA plan. A party without control over the distribution of assets is therefore not a proper party in interest to the claim, and has no statutory standing to oppose a distribution of benefits out of the plan, either by asserting a limitations defense or otherwise. Defendants have no such control or authority, and therefore have no standing to oppose the distributions to Browe and Launderville.

The error in Defendants' position flows in part from their misconception of the source of participants' rights to their Plan benefits. The rights of participants (including Browe and Launderville) do not arise from § 502(a)(1)(B), but from terms of the Plan itself, subject to other provisions of ERISA governing its interpretation and application (particularly the minimum vesting provisions). *See Browe I*, 15 F.4th at 203–04 (discussing the issue of vested rights under the terms of the Plan

and applicable ERISA provisions).  Section 502(a)(1)(B) is merely one of ERISA's enforcement mechanisms, and does not create substantive rights in retirement plans.  *Massachusetts Laborers' Health & Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23, 27 (1st Cir. 1988).  As the text of the statute indicates, it provides a procedure for a participant or beneficiary to recover benefits and enforce rights "under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).  This point is inescapable given that many participants included in the District Court's remedial scheme are not parties to this case at all, and have never filed any § 502(a)(1)(B) claims.  Like Browe and Launderville, their vested rights to benefits are not derived from § 502, but from the Plan terms and other provisions of ERISA which govern its interpretation.

The District Court appears, in at least some degree, to have recognized this issue, when it stated in its 2022 Remedial Order that, "Once the Restoration Award is paid in full, the Plan shall be terminated. At that point, Plaintiffs' recovery of benefits claims against Defendants shall be **deemed moot**."  (SA28, emphasis added.)  Although the District Court phrased the issue as one of mootness rather than statutory or Constitutional standing, this is unsurprising given the relationship between mootness and standing.  *See Friends of the Earth, Inc. v. Laidlaw Env't*

18

*Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (explaining the relationship and distinction between mootness and standing). What the District Court recognized is that participants' rights in their benefits are not dependent on a determination of any claims under § 502(a)(1)(B) against Defendants.

At this stage of the litigation, Defendants have no statute of limitations "defense" against Browe and Launderville's § 502(a)(1)(B) claims, because those claims do not lie against Defendants, who have been removed as administrators. As a matter of law, they have no authority over the distribution of assets from the Plan to participants, and therefore lack standing to oppose the distributions in the District Court's remedial scheme.

### B. Defendants' cross-appeal also fails for lack of standing under Article III of the Constitution.

The fact that Defendants are no longer administrators also creates a defect in Constitutional standing that requires rejection of Defendants' cross-appeal. On the subject of Article III standing, the Supreme Court has stated:

> Although rulings on standing often turn on a plaintiff's stake in initially filing suit, "Article III demands that an 'actual controversy' persist **throughout all stages of litigation**." *Hollingsworth [v. Perry]*, 570 U.S. [693,] 705 [(2013)] (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 . . . (2013)). The standing requirement therefore "**must be met by persons seeking appellate review**, just as it must be met by persons

19

appearing in courts of first instance." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 . . . (1997). As a jurisdictional requirement, standing to litigate **cannot be waived or forfeited**.

*Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950–51, 204 (2019) (emphasis added).  Defendants must therefore meet the requirements of Constitutional standing to seek appellate review.

At this stage of the litigation, the distribution of benefits from the Plan's recovered assets to participants (including Browe and Launderville) does not present any "actual controversy" between participants and Defendants under Article III.  Any point of disagreement Defendants may have with the distribution is therefore not a matter on which Defendants can meet the standing requirements for appellate review.

The minimum required elements of Article III standing are "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Id.*  All three elements are lacking in Defendants' challenge to the District Court's order.

Because Defendants are not Plan administrators, the third element, "redressability", cannot be met in Defendants' disagreement with the distribution of Plan assets.  The Eighth Circuit addressed this issue in *Hall v. LHACO, Inc.*, in which a plan participant filed an action for benefits

against a party that at one time provided administrative services to the Plan. 140 F.3d 1190, 1191, (8th Cir. 1998). The defendant's role in providing services to the plan later ceased, *id.* at 1193, which led the court to following conclusion on the issue of Article III standing: "Here, we find that Hall's claim pursuant to § 502(a)(1)(B) simply is not redressable against LHACO, because LHACO no longer provides any administrative services to Hall's ERISA Plan." *Id.* at 1195–96.

By the same token, in this case, the rights of the Plan participants in their benefits are not redressable against Defendants, because Defendants are no longer in the role of Plan administrators. Defendants' challenge to the distribution of benefits therefore fails for lack of the required third element of Constitutional standing.

To be clear, Plaintiffs' claims for breach of fiduciary duties, which were brought on behalf of the Plan *as a whole*, and on which Defendants are liable to restore losses *to the Plan*, are still a matter in controversy which satisfies Article III standing. Defendants' liability to the Plan on those claims, however, is distinct from the individual rights of participants' to their Plan benefits, and is unaffected by how the Plan's assets are distributed to the participants. As this Court has already determined, the calculation of Defendants' liability to the Plan is derived from the total

principal amount misappropriated from the Plan as a whole, plus the Plan's reasonable lost investment gains. *Browe I*, 15 F.4th at 199. The subsequent allocation and distribution of funds from the Plan to participants does not affect the calculation of Defendants' liability to the Plan. Thus, although an actual controversy exists between Defendants and *the Plan* for Article III purposes, no such controversy exists between Defendants and the individual participants to whom Plan assets are distributed.

This means that in addition to a lack of redressability, Defendants' cross appeal also cannot meet the first or second element of Article III standing ("injury" and "traceability"). The distribution of Plan assets in the District Court's remedial scheme has no effect on them. There is no injury to them, and no traceability between the distributions and any impact on them. Regardless of whether or not Browe and Launderville are included in the remedial scheme, Defendants point to no authority that would permit them to keep or to have refunded to them any portion of the whole Plan's losses. No such result is possible, because it would be expressly prohibited by ERISA. 29 U.S.C. § 1103(c).

Defendants do note that ERISA § 4044(c), 29 U.S.C. § 1344(c), can in some circumstances allow credit to an employer corporation for increases in a plan's value occurring after a plan's termination date, but in this case,

that statute does not create any connection between the distribution of Plan assets and Defendants or the amount of their liability.  In their reference to § 4044(c), Defendants ignore that the Plan in this case is a "defined contribution plan."  *Browe I*, 15 F.4th at 197 n. 13.  Participants' benefits are therefore "based solely upon the amount contributed to the participant's account, and any income, expenses, **gains and losses**, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C.A. § 1002(34) (emphasis added).  Unlike defined benefit plans, gains and losses in a defined contribution plan are necessarily a component of the benefit amounts distributed to participants. In the termination of a defined benefit plan, by contrast, the value of participants' benefits are determined by plan terms and in accordance with valuation rules promulgated by the Secretary of Labor, *see* 29 C.F.R. § 4044.10, 4044.41–53, such that the post-termination gain provision in § 4044(c) is necessary to account for gains and losses in plan value occurring after the benefit valuations have been fixed.[2]

---

2. In general, Subchapter III of ERISA (in which § 4044 is found) applies only to defined benefit plans. *Browe I*, 15 F.4th at 197 n. 14.  Section 403(d)(1) of ERISA extends § 4044's application to defined contribution plans for the purpose of allocating assets on termination, which is dealt with by the allocation and priority provisions found in § 4044(a) and (b).  There is therefore no reason to assume that § 4044(c) was ever intended to apply to defined contribution plans, or that such an application would ever be possible, since gains and losses are all captured in participants' individual benefit accounts.

Defendants do not explain how post-termination gains or losses—as described in § 4044(c)—could ever be possible in a defined contribution plan, let alone that they would be credited to (or born by) the employer corporation, rather than simply accounted for in participants' individual account balances as ERISA requires. Even if there were support for such a position, Defendants do not explain how the decision on whether include Browe and Launderville in the remedial scheme in this case could effect a post-termination change in plan value in which they would have any interest.

As a matter of law, therefore, Defendants have no interest in how the Plan's assets are distributed, and no authority or control over the distribution. The challenge to the District Court's remedial scheme on cross appeal must therefore be dismissed for lack of Constitutional standing.

## II. Defendants' arguments on cross appeal do not show any reversible error.

In addition to the lack of standing in their cross appeal, Defendants' arguments fail to demonstrate any reversible error in the portion of the District Court's decision they challenge. The lynchpin of most of Defendants' arguments is their position that the District Court rightly found Browe and Launderville's § 502(a)(1)(B) claims untimely under the

statute of limitations, and that it was therefore error to include them in the distribution of Plan benefits. Defendants also argue that Launderville should be excluded from the distribution of Plan assets because of her actions as a co-fiduciary. These arguments fail for the following reasons.

### A. The statute of limitations does not prohibit distributions of Plan benefits to Browe and Launderville.

Defendants' first argument is that Browe and Launderville have no "colorable claim" for Plan benefits because their § 502(a) claims are time-barred, and that this deprives them of standing as "participants" and requires their exclusion from the distribution of Plan assets. For support, Defendants' cite the Ninth Circuit case of *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026 (9th Cir. 2006), but *Chuck* does not support their argument.

*Chuck* addressed the question of whether a plaintiff had statutory standing to file a federal lawsuit under ERISA for reporting and disclosure violations, breach of fiduciary duty claims, and other claims. *Id.* at 1038–39. In this case, none of the Plan participants (Browe and Launderville included) are required to file or become parties to any lawsuit, or establish standing to do so, in order to receive Plan benefits. Indeed, most of the participants receiving benefits are not parties to this case. They do not need standing to file suit, because they do not need to file or join a lawsuit at all.

25

Neither *Chuck*, nor the statute of limitations itself, nor any authority cited by Defendants, presents a rule that would prohibit the District Court from including Browe and Launderville in the remedial scheme. Including Browe and Launderville does not violate any beneficiary's or participant's rights in the Plan, nor does it violate any right of Defendants. It has no impact at all on Defendants, whose liability to the Plan—as explained above—is not affected by how the Plan's assets get distributed. Because Plan participants and beneficiaries do not need to file lawsuits for their benefits, Defendants standing argument presents no reason to reverse the District Court's decision to include Browe and Launderville.

In addition, *Chuck* involved unique circumstances, in that the plaintiff's claim for benefits was so clearly time-barred that the claim was no longer "colorable." *Id.* at 1039. The court laid out a litany of facts (including the plaintiff's own admission) that made the untimeliness of the plaintiff's claim an obvious certainty, and reached its conclusion based partly on the plaintiff's "own actions and understandings." *Id.* 1036–38. On those facts, the court found that the plaintiff's claim was not "colorable." *Id.* at 1039.

Unlike the plaintiff in *Chuck*, Browe and Launderville have colorable claims. A claim need not ultimately succeed in order to be colorable. *See*

*Schlaifer Nance & Co. v. Est. of Warhol,* 194 F.3d 323, 337 (2d Cir. 1999) (stating, in the context of a sanctions award, that "[a] claim is colorable when it reasonably might be successful, while a claim lacks a colorable basis when it is utterly devoid of a legal or factual basis). As explained in Part IV of Plaintiffs' principal brief in this appeal, and as further argued below in Part III(D) of this brief, Browe and Launderville's § 502(a)(1)(B) claims were not barred by the statute of limitations at all, but were timely. Even if this Court were to disagree with that conclusion, the claims were at least "colorable," and *Chuck* therefore does not apply. The District Court's decision to include Browe and Launderville in the remedial scheme is therefore not error.

### B. Distributing benefits to Browe and Launderville does not render the statute of limitations meaningless.

Defendants' second argument is that distributing benefits to Browe and Launderville will render the statute of limitations meaningless. This argument ignores the point already discussed above, that § 502(a)(1)(B) is an enforcement mechanism rather than a source of participants' entitlement to benefits in the first instance. The terms of the Plan itself— not § 502(a)(1)(B)—are what establishes and defines participants' benefit rights. Many Plan participants have therefore benefited from this case based on their rights under the Plan, with no need to turn to the

enforcement mechanism provided in § 502(a)(1)(B). That fact does not render the statute of limitations meaningless. The statute still has the same effect of prohibiting an individual from filing a lawsuit beyond a certain time. Nor does the result of this case create any incentive for participants or beneficiaries to delay action, because they would still lose their own opportunity to file a § 502(a)(1)(B) lawsuit as a means of enforcement if they failed to do so within the time allowed.

The statute of limitations does not, however, dictate participants' substantive rights to benefits under the terms of the Plan, nor does it operate as an affirmative prohibition *against* the distribution of Plan benefits to any participant. It therefore presents no error in the District Court's decision to include Browe and Launderville in the remedial scheme.

## C. The District Court's adherence to ERISA § 4044(c) is not error.

Defendants also insist that the District Court erred by following the allocation provisions stated in ERISA § 4044, 29 U.S.C. § 1344, which governs the distribution of ERISA plan assets upon termination of a plan. ERISA § 503(d)(1) mandates that when a plan terminates, its assets "shall be allocated in accordance with the provisions of section 1344 of this title, . . . ." 29 U.S.C.A. § 1103(d)(1); *see also* 29 C.F.R. § 4044.4(a) ("A plan administrator violates ERISA if plan assets are allocated or distributed

upon plan termination in a manner other than that prescribed in section 4044 of ERISA and this subpart, . . . ."). Defendants' arguments do not show any error by the District Court in following these mandatory allocation provisions of ERISA.

Defendants argue that § 4044 is inapplicable because, according to Defendants, the Plan has not been terminated by court order. (Appellees' Brief at 37.) Defendants are mistaken on this point. The District Court's 2022 Remedial Order states in part, "Once the Restoration Award is paid in full, the Plan shall be terminated." (SA28.) Although the Order described the Plan termination as an event that "shall" occur after distribution of assets, rather than as a past event, this is consistent with ERISA provisions governing plan termination dates, which generally provide for distribution of plan assets pursuant to a termination before the actual "date of termination." *See* 29 U.S.C. § 1341(b), (c) (describing the termination process). As ERISA's termination provisions show, the termination of a plan is necessarily a process over a period of time. The fact that the date of termination comes after final distribution is therefore unremarkable, and does not change the fact that assets are being distributed in this case pursuant to a termination of the Plan. The court explicitly ordered the

termination of the Plan, therefore triggering the mandatory application of § 4044 in the allocation of assets.

Defendants also argue that following § 4044's allocation provisions effectively "extinguishes" the statute of limitations for § 502(a)(1)(B) enforcement claims. That is not the case. As already explained above, the statute still has the effect of limiting the time period in which a lawsuit may be filed under § 502(a)(1)(B), as an avenue for individual enforcement. The allocation of assets by the District Court among Plan participants—who are not required to file § 502(a)(1)(B) claims—does not change that effect.

Finally, Defendants argue that the District Court impermissibly relied on § 4044 as a source of "entitlement to benefits," when the statute does not serve that purpose. This argument confuses the source of Plaintiffs' and other Plan participants and beneficiaries' rights. As already explained above, the rights of participants and beneficiaries in the Plan's assets arise from the *terms of the Plan*, subject to certain provisions of ERISA which govern the Plan's application and effect (such as ERISA's minimum vesting provisions). *See Browe I*, 15 F.4th at 203–04 (discussing the issue of vested rights under the Plan's terms and applicable ERISA provisions). The District Court found all of Plaintiffs' rights under the Plan vested on remand, and determined the rights of other participants under the Plan as

well. (A319.) Defendants make no challenge to those findings. There is therefore no error in the District Court's allocation pursuant to § 4044.

### D.    Browe and Launderville's claims were timely.

Even if the statute of limitations applicable to § 502(a)(1)(B) could somehow prohibit the distribution of Plan assets to Browe or Launderville, the District Court's decision to include Browe and Launderville in the distribution must still be affirmed, because the record supports the conclusion that their claims were timely.  This Court may affirm the District Court's decision on that alternative basis, notwithstanding the District Court's conclusion that the claims were time-barred. The applicable rule of appellate review is well established:

> But it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.

*United States v. Am. Ry. Exp. Co.*, 265 U.S. 425, 435 (1924).

Plaintiffs arguments demonstrating the timeliness of Browe and Launderville's § 502(a)(1)(B) claims are set out in Part IV of their principal brief, and further explain below in Part III(D).  Those arguments need not be repeated here, but it must be noted that the District Court's decision to include Browe and Launderville in the distribution must be affirmed on that alternative ground, if not on the other grounds state above.

31

### E. Launderville's actions as a co-fiduciary do not require the she be excluded from the remedial scheme.

In their final argument in support of their cross appeal, Defendants argue that Launderville should be excluded from the remedial scheme because of her breach of fiduciary duties. The argument ultimately depends on the premise that her Plan benefits may be offset by her liability in this case. Defendants' reliance on *Parker v. Bain*, 68 F.3d 1131 (9th Cir. 1995), makes this clear, because the holding in *Parker* rests on a decision to offset a plaintiff's benefits in a plan by liability he "owed *to* the Plan" in his capacity as a fiduciary. *Id.* at 1140. The plaintiff had been sued by the plan directly, and found liable directly to the plan for embezzlement of plan assets. *Id.* at 1134–35. *Parker* does not support Defendants' argument in this case, because Launderville's benefits cannot be offset. That conclusion is already explained in Part I of Plaintiffs' principal brief previously filed in this appeal, and further argued in Part III(A), below. The District Court therefore did not err in including Launderville in the distribution scheme.

## III. Reply arguments in support of Plaintiffs' appeal.

### A. The offset of Launderville's benefits violates ERISA's anti-alienation statute.

In their arguments in opposition to Plaintiffs' appeal, Defendants first attempt to support the District Court's order offsetting Launderville's Plan benefits based on her contribution liability owed to Defendants. In their

brief, Defendants resort to equitable arguments for the offset. None of their arguments, nor any cases they cite, provide a justification to disregard the plain language of ERISA's anti-alienation provision at § 206(d), which prohibits the charging of Launderville's benefits. Defendants' argument ignores the Supreme Court's admonition in *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365 (1990), quoted at length in Plaintiffs' initial brief in this appeal, that ERISA's anti-alienation provision necessarily reflects a policy determination that "takes precedence over the desire to do equity between particular parties," and that "the identification of any exception should be left to Congress." *Id.* at 376–77.

Defendants also fail to cite any case in which an offset of ERISA benefits was allowed based on a liability for contribution owed *to a culpable co-fiduciary*, rather than for liability owed to a plan. Their reliance on *Lehr v. Perri*, No. 2:17-CV-1188, 2019 WL 1556672 (E.D. Cal. Apr. 10, 2019), is misplaced for reasons already explained in detail in Plaintiffs' principal brief, in that the case involved a fiduciary who was liable *to the plan* directly, rather than liability for contribution owed to a co-fiduciary who also breached his duties. (Appellees' Brief at 25.) Defendants' reliance on *Parker v. Bain* fails for the same reason. *See Parker*, 68 F.3d at 1141 (upholding a benefit offset based the beneficiary's liability *to the plan* for

embezzlement). Defendants also cite *Youngberg v. The Bekins Co.*, but that case merely approved of an indemnity claim between co-fiduciaries, and did not involve an offset or charge against ERISA plan benefits at all. 930 F. Supp 1396, 1403 (E.D. Cal. 1996). Defendants therefore provide no justification to disregard the plain language of ERISA's anti-alienation statute at § 206(d), including its provisions that define and limit the extent of its exceptions.

Defendants go on to argue that even under the language of § 206(d), Launderville's benefits should still be offset because her contribution liability to Laumeister is the same "in effect" as liability to the Plan, and that her contribution liability is not owed to "Laumeister personally" but "to the Plan through Laumeister as a fiduciary." (Appellees' Brief at 49.) That assertion is false both as a matter of law and as a practical matter. This Court has already confirmed the point that Laumeister did *not* bring his contribution claim as a fiduciary: "Laumeister did not, however, bring his counterclaim against Launderville on behalf of the Plan, nor did he seek to recover on behalf of the Plan for injuries to it." *Browe I*, 15 F.4th at 201. Laumeister is himself liable "for the full amount of the Plan's losses." *Id.* at 200. His counterclaim in contribution is to recoup a share of what he pays from Launderville, to his own benefit.

As a practical matter, this Court has previously concluded that allowing claims in contribution between ERISA co-fiduciaries has "no financial impact" on ERISA plaintiffs. *Chemung Canal Tr. Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 16 (2d Cir. 1991). There can be no argument, therefore, that liability between co-fiduciaries is the same "in effect" as liability to a plan, in either a legal or practical sense. The text of § 206(d) therefore does not allow an offset against Launderville's ERISA benefits for her contribution liability to Defendants.

Defendants also assert that "the Plan has not suffered any loss to the extent of Launderville's benefits," and that allowing an offset would therefore not allow Defendants to retain any losses they owe to the Plan in violation of ERISA. (Appellees' Brief at 50.) This again ignores the manner in which the Plan's losses must be calculated in this case, which is the sum of the total principal misappropriated from the Plan as a whole, plus the whole Plan's lost investment gains. *Browe I*, 15 F.4th at 199. As explained in Plaintiffs' principal brief, allowing the offset would allow Defendants to keep for themselves a portion of what they owe to Plan, would which violate ERISA. (Appellants' Brief at Part II(B).) For all the reasons stated in Plaintiffs' principal brief (in particular, the plain language of § 206(d)), the District Court's order for the offset must be reversed.

**B.    Defendants' arguments regarding the allocation of fault are not supported by the record.**

In an effort to support the District Court's 50/50 allocation of fault between Launderville and Laumeister, Defendants rely on a series factual characterizations that are not support by the record in this case.  They claim that the District Court's failure to include CTC in the allocation of fault is justified because "CTC has no assets from which any potential allocation could be drawn and CTC did not authorize the use of plan funds for business operations."  (Appellees' Brief at 51.)  As already explained in Plaintiffs' principal brief, the assertion that CTC has no assets is contradicted by Defendants' own admission in the record in this case.  (Appellants' Brief at 31–32.)  It is unclear what Defendants mean by their claim that CTC "did not authorize" the misuse of Plan assets for its expenses.  CTC is a corporation, which necessarily acts through its human agents.  Laumeister was its sole owner and Chief Executive Officer throughout its existence.  *Browe I* 15 F.4th at 184.  It is long beyond dispute in this case that Laumeister and CTC *did* deposit Plan funds in CTC's operating accounts, and did use those funds for its operating expenses.  Nothing further must be shown regarding the benefit to CTC of misappropriating Plan assets.  There is therefore no justification for excluding CTC from the allocation of fault.

With respect to Laumeister, Defendants argue that he cannot be considered to have received any benefit from the misuse of Plan assets for purposes of allocating liability, because any benefit to him was not a "personal" benefit. (Appellees' Brief at 54.) They cite § 102 of the Restatement (Third) of Trusts, which limits the right of contribution for a trustee who "personally benefited" from a breach. Based the Restatement's use of the word "personally", they argue that because Laumeister dumped the Plans assets into CTC—his solely owned business—rather than depositing in his own name, no benefit to him can be found for purposes of allocating liability. Defendants' view would allow a fiduciary to alter the equitable allocation of liability by simply diverting misappropriated assets into an entity he owns rather than keeping them in his own name. Given that contribution is by nature an "equitable" remedy, *Chemung Canal*, 939 F.2d at 16, this Court need not and should not adopt such an inequitable position. For the reasons explained in Plaintiffs' principal brief, the benefit to Laumeister of misappropriating Plan assets must be considered in the interest of equity.

With respect to the allocation of liability against Launderville, Defendants attempt to recharacterize the facts of this case against her in more and more extreme terms, which cannot be supported by the record.

For example, Defendants go so far as to claim that Launderville "fraudulently induced" Laumeister to misappropriate the Plan's assets. (Appellees' Brief at 56.)  That contention is indefensible under the record. Laumeister simply "told Launderville 'that because of the deteriorating financial condition of CTC, the [P]lan was being terminated and the funds would be used to pay business operating expenses.'" *Browe I*, 15 F.4th at 188.  There is no suggestion in the record and no finding in this case that Launderville even knew about Laumeister's decision to spend Plan assets on CTC business expenses until Laumeister had made the decision and told her about it, let alone any suggestion that she "fraudulently induced" him to do so, or ever made any false or misleading statement to Laumeister in connection with the Plan.

Elsewhere in their brief, Defendants assert that Launderville was not "under the control of a more experienced trustee." (Appellees' Brief at 57.) That assertion is contradicted by the court's finding that "[a]t all times, [Laumeister] held a superior position to Plaintiff Launderville and was able to exert control over her Plan decision-making," (A278), and further undermined by Laumeister's sole control over the account with the Plan's funds.  (A120–26; A137.)  Throughout Defendants' brief, accusations against Launderville appear next to citations to the record, but the cited

38

portions of the record do not support the many extreme terms in which the accusations are shaded against Launderville.  On remand after the first appeal, no additional evidence was offered of taken by either party on the issue of contribution between co-fiduciaries.  (A321.)  The evidence on the subject is therefore the same as it was when this Court analyzed the issue in the first appeal.  *Browe I*, 15 F.4th at 200–01.  Defendants cannot support their position by recasting the same facts in increasingly extreme terms.

As argued in Plaintiffs' principal brief, the 50/50 allocation of fault between Laumeister and Launderville must be vacated.

## C. The District Court's recalculation of the award to the Plan must be vacated.

Part III of Defendants' argument in opposition to Plaintiffs' appeal defends the District Court's recalculation of the Plan balance.  Defendants' argument again misconceives Plaintiffs' position as an attack on the "Base Amount" used by the District Court in the calculation, and ignores that the District Court's recalculation already *does* depart from the previously projected 2004 balance, based on pre-2004 adjustments for withdrawals (which worked in Defendants' favor).  This point is fully addressed in Plaintiffs' principal brief and not repeated here.  As argued there, the District Court cannot refuse to also make pre-2004 adjustments in the

Plan's favor based on growth in the actual balance via gains or contributions. The recalculated award must therefore be vacated.

### D. Browe and Launderville's § 502(a)(1)(B) claims were timely filed.

In both their cross-appeal and their opposition to Plaintiffs' appeal, Defendants defend the District Court's finding that Browe and Launderville's § 502(a)(1)(B) claims were barred by the statute of limitations. Both parties agree that the relevant six-year limitations period does not accrue until there is a "clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits." *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999). There is also no dispute that neither Launderville nor Browe had reached age 65 (the age to receive Plan benefits) until after they filed suit. (A208; A218–19.) Thus the limitations defense depends on proof of a clear repudiation that was known, or should have been known, to Browe and Launderville years before they were even eligible for benefits.

Defendants do not point to any communication, or even to a group or series of communications over time, that present a "clear repudiation" of benefits. Their only argument is that Browe and Launderville's knowledge of CTC's troubled condition equates to a "clear repudiation." This merely

restates the District Court's reasoning, which is erroneous for reasons already addressed in Plaintiffs' principal brief.

None of the cases cited by Defendants hold that knowledge of poor financial condition, or of a poor financial outlook, can be treated as the equivalent of a clear repudiation of entitlement to ERISA benefits. There is no authority to charge a beneficiary with such foresight of the eventual and ultimate failure and dissolution of an employer or a plan, to occur years in the future. Moreover, it cannot be forgotten that in this case, CTC continued in business until 2014, and as of 2016 CTC *still owned assets* valued at over $400,000, which is *more than the total of Browe and Launderville's benefits*. On top of this stand the repeated statements by Laumeister (who at the time was a Plan administrator) which *affirmed* Browe and Launderville's Plan benefits, rather than repudiating them, and promised that the benefits *would* be paid, as already discussed in Plaintiffs' principal brief. There is therefore no reason to charge Browe and Launderville with assuming in 2008 that there benefits would not be paid. Their § 502(a)(1)(B) claims were therefore timely filed in 2015.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court must affirm the judgment of the

District Court, EXCEPT as otherwise set forth in the Appellants' principal

Brief.

Dated: May 17, 2024

/s/ John D. Stasny_____
John D. Stasny, Esq.
WOOLMINGTON, CAMPBELL, BENT & STASNY, P.C.
*Attorney for Plaintiffs-Appellants*
4900 Main Street, PO Box 2748
Manchester Center, VT 05255
(802) 362-2560

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 28.1(e)(2)(A)(i) and 32(a)(7)(B)(i), and with Local Rule 28.1.1(a), because this brief contains 7,433 words, excluding items listed in Federal Rule of Appellate Procedure 32(f) .

This brief complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Georgia font.

Dated May 17, 2024

/s/ John D. Stasny
John D. Stasny, Esq.
WOOLMINGTON, CAMPBELL, BENT & STASNY, P.C.
*Attorney for Plaintiffs-Appellants*